# Janice M. Dreves v. Richard F. Dreves

[628 A.2d 558]

No. 91-093

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed June 11, 1993

*Catherine E. Clark* and *Gregory Jeffers,* Law Clerk (On the Brief), Burlington, for Plaintiff-Appellant.

*Paul D. Jarvis* of *Jarvis & Kaplan,* Burlington, for Defendant-Appellee.

**Allen, C.J.** Plaintiff appeals from an order of the Grand Isle Family Court distributing the marital assets and declining to award maintenance. We reverse.

The parties married in 1984 and separated in January 1990. Plaintiff is now forty-four years old and defendant is age fifty. Before the marriage, plaintiff lived in Pennsylvania, where she earned $19,000 annually as an office manager. After she married defendant, she moved to Vermont and was not employed for the first two years. The trial court characterized plaintiff's unemployment as resulting from a mutual agreement, but plaintiff argues it was at defendant's insistence. Plaintiff is currently a personnel administration supervisor earning $28,000 annually. Defendant earns $50,000 annually at IBM.

The parties initially lived in defendant's Westford home, and then purchased a home in Grand Isle in 1984 for $107,000, $70,000 of which came from defendant's funds and the balance from a mortgage of about $37,000. The court found that the value of the house doubled during the years it was owned by the parties, adding $107,000 in value, for a total of $214,000. At the conclusion of the marriage, the parties obtained a home equity loan, thereby increasing the total mortgage indebtedness to about $47,000. Much of the home equity loan was used to finance plaintiff's purchase of a new $16,000 car. The resulting net value of the home was about $167,000. Based on the court's finding as to the current net equity in the house, the total in-

crease in the net value of the house during the marriage was approximately $97,000 ($167,000, less the initial $70,000 net value upon purchase of the house).

The court awarded plaintiff $37,000, the car she had purchased (free of the home equity indebtedness related to it, which defendant assumes under the order), personalty in her possession, and the balance of her future college tuition and cost of books not met by her employer (which was paying ninety percent). No specific value was assigned to the tuition and books.

Defendant received, in addition to the house, an Investors Diversified Services investment account valued at $35,502, a tax-deferred savings plan at IBM valued at $30,947, an IBM pension plan valued at $40,007, and an IRA account valued at $22,106, totalling $128,562, $105,000 of which had been acquired during the marriage, according to plaintiff. The court did not make findings on the increase in value in the investment and retirement plans, did not rule on plaintiff's contention that reasonable value be assigned to her contribution as homemaker during the marriage, and did not award her maintenance, which she had sought as an alternative to her request for a share of the marital property. The present appeal followed.

■  Plaintiff argues first that the court erred in finding that the current value of the homeplace was only $214,000. We disagree. Plaintiff's main argument is that the court misunderstood the testimony of her expert witness, who testified that "[w]ithout any kind of improvement, I would suspect that . . . that property would have doubled in value." Plaintiff testified that there were extensive improvements to the property, and the court agreed in its findings. But the court noted that two houses in the neighborhood had remained on the market for many months without being sold and found that "the real estate market is currently depressed." It was not bound by the testimony of plaintiff's expert.

■  Plaintiff also argues that the court should have admitted and considered a letter from defendant's counsel conceding that the property's value was $250,000. Whether or not the letter (which did not appear to have been written in the context of a settlement offer) should have been admitted, it would not have

estopped defendant from arguing a lower value at trial. Thus, even if the letter had been admitted, the court's finding that the homeplace had a current value of $214,000 would not have been clearly erroneous.

▪ Plaintiff argues that even accepting the court's $214,000 valuation for the home, the distribution of marital assets was so inequitable as to constitute an abuse of discretion, particularly in light of the absence of any explanation for the disparity. Section 751 of Title 15 requires that the court "equitably divide and assign the property" and sets out twelve factors that the court "may consider." 15 V.S.A. § 751. The trial court has discretion in considering these factors, and is not required to explain the exercise of its discretion with mathematical precision or specify the weight given to each of the statutory factors. *Semprebon v. Semprebon*, 157 Vt. 209, 215, 596 A.2d 361, 364 (1991). Thus, we will not disturb the court's findings of fact unless, viewing the evidence in the light most favorable to the prevailing party and excluding the effect of modifying evidence, a finding is clearly erroneous. *Id.* at 214, 596 A.2d at 363.

▪ The court's discretion, however, is not unlimited. We have always required that the findings "provide a clear statement as to what was decided and why." *Richard v. Richard*, 146 Vt. 286, 287, 501 A.2d 1190, 1190 (1985). The principal findings in the present case fall far short of that mark. The net value of the homeplace was $167,000, and the total value of the financial plans was about $128,500. Thus, the total value of the marital assets at issue, excluding other personalty and the future payments for tuition and books, was about $295,500. Plaintiff received $37,000 or about 12.5% of this total amount. Even if plaintiff's award is considered as a share of the *net increase* in the value of the financial assets during the marriage, she received only 18.3% of the total net increase.*

---

* Although the court made no findings about the net increases in the financial assets over the life of the marriage, the undisputed evidence shows that the net increase in the financial assets was $105,000. Adding to that sum the net increase in the value of the homeplace of $97,000, the net increase in marital assets at issue totals about $202,000. Plaintiff's share of the total amounts to only 18.3%.

The court's only explanation for its decision was its reference to findings that this was "a fairly short marriage" and that nearly all of the assets were originally attributable to the defendant. Although § 751(b)(10) allows the court to give weight to "the party through whom the property was acquired," there are limits to the court's discretion. The court awarded defendant a considerably larger share of the assets than plaintiff despite factual findings that plaintiff left her home state and her employment there; that she withdrew from the workforce and served as homemaker for two years of the marriage with at least the approval, if not the desire, of defendant; that defendant's present earning capacity is considerably greater than hers; and that since defendant was awarded the homeplace, plaintiff will have the expense of finding a suitable place to live. Far from providing a clear statement as to what the court decided and why, it offered no explanation for the large disparity in its awards of marital property to each of the parties.

■ Defendant argues that the court credited him with $70,000 of the appreciated value of the house, which was the amount he had originally contributed to the purchase price, and awarded plaintiff the remainder of the appreciated value of $37,000, and that since plaintiff was awarded all of the increase in the equity of the house, there was no error in assigning the increase in the other assets to the defendant.

If this was the rationale employed by the court, it is faulty because defendant had already received the amount he contributed toward the purchase of the house. The house, valued at $214,000, was decreed to him. After deducting the $70,000 he contributed and the $47,000 encumbrance, $97,000, not $37,000, in equity remained to be distributed. Acceptance of defendant's explanation would credit him twice for the original contribution.

■ Compounding the problem for this Court is the absence of specific findings as to the percentage of the increase in the value of investment and retirement plans during the marriage. Under 15 V.S.A. § 751(a), "[a]ll property owned by either or both of the parties, however and whenever acquired, shall be subject to the jurisdiction of the court." Consequently, the court's division of the marital assets was not limited to the in-

crease in value during the marriage. But plaintiff argued for an award that was based on what she considered to be a fair portion of the amount of that increase. Without any explanation of the court's methodology, we cannot determine whether the $37,000 cash award should be measured against all of the marital assets or only the amount of the increase during the years of the marriage.

In sum, the disparity in the property award in the present case is significant, and our need for some understanding of the trial court's rationale is paramount. In the absence of a "clear statement as to what was decided and why," and "where no indication appears of the method employed and weight accorded various factors, remand is necessary." *Richard*, 146 Vt. at 287, 501 A.2d at 1190–91.

We need not reach the question of the court's failure to award maintenance, since plaintiff sought maintenance as an alternative to a suitable property award, and the court on remand is free to reexamine the interrelationship of its property disposition and maintenance determination. *Klein v. Klein*, 150 Vt. 466, 475, 555 A.2d 382, 388 (1988).

*Reversed and remanded.*