# Hiyam H. Kanaan v. Hisham R. Kanaan

[659 A.2d 128]

No. 91-378

Present: Gibson, Dooley, Morse and Johnson, JJ., and Norton, Supr. J., Specially Assigned

Opinion Filed March 24, 1995

*William M. Dorsch, John D. Shullenberger* and *Beth A. Danon* of *Mickenberg, Dunn, Sirotkin & Dorsch,* and *Donald E. O'Brien,* Burlington, for Plaintiff-Appellant.

*Ellen Mercer Fallon* and *Peter F. Langrock* of *Langrock Sperry & Wool,* Middlebury, for Defendant-Appellee.

**Dooley, J.** Plaintiff, Hiyam Kanaan, appeals a decision of the Windham Family Court in the divorce action against her former

husband, Hisham Kanaan. Plaintiff alleges that the trial court erred: (1) in its findings regarding the valuation of the parties' individual businesses and their marital home, (2) in denying plaintiff reimbursement for the couple's joint tax liability, (3) in failing to enforce the parties' initial separation agreement, and (4) by permitting defendant to pay plaintiff's equitable settlement award in installments, thereby decreasing the actual value of that award. We conclude that the trial court erred by failing to enforce the parties' pretrial agreement, and by permitting defendant to pay the equitable settlement award in installments. We reverse and remand on both of these issues. In all other respects, the decision is affirmed.

## I.

Plaintiff first claims that the trial court's factual findings regarding the valuation of the couple's individual businesses and their marital home were inadequate. Specifically, she points to the findings supporting the court's valuation of her husband's businesses, collectively known as the Bradley Group; her business, Brattleboro Printing, Inc. (BPI); and the couple's marital home in Brattleboro. Plaintiff contends that for each asset the court's findings were inadequate to support its valuation conclusions. We deal with each argument in turn.

■■ It is well settled that we will not disturb a trial court's findings of fact unless they are clearly erroneous. *Semprebon v. Semprebon*, 157 Vt. 209, 214, 596 A.2d 361, 363 (1991). The reason the trial court is granted such wide deference on review is that it is in a unique position to assess the credibility of the witnesses and the weight of the evidence presented. *Bonanno v. Bonanno*, 148 Vt. 248, 250-51, 531 A.2d 602, 603 (1987). Consequently, we will uphold the court's valuation conclusions as long as they are supported by adequate findings, which are in turn supported by sufficient evidence in the record. See *Goodrich v. Goodrich*, 158 Vt. 587, 590, 613 A.2d 203, 205 (1992).

Plaintiff's first claim of error relates to the court's valuation of her husband's businesses. These businesses are collectively known as the Bradley Group, and are comprised of four separate companies: C.E. Bradley Laboratories, Inc., Bradley VanHolm Corporation, Industrial Coatings, Inc., and 3-R Realty, Inc. The trial court heard extensive evidence from four separate experts regarding how to value this group, and each expert used a different methodology. For example, defendant's expert valued the Bradley Group at $735,000 by

calculating average earnings over a five-year period and then multiplying that amount by a projected rate of return. One of plaintiff's three experts, and the expert upon whom the court most heavily relied, calculated the worth of the companies by compiling a consolidated balance sheet, and then adding to this value adjustments which reflected the difference between the appraised value of certain assets versus their depreciated value; he originally estimated the worth of companies at $1,450,000.

This expert's calculations, however, did not include the value of 3-R Realty, and plaintiff introduced testimony from another expert regarding the valuation of this company. In addition, C.E. Bradley Laboratories owned 65,000 shares of stock in an insurance company called Verlan, Ltd. Plaintiff provided evidence that the value of this stock was $241,000, and that it needed to be valued separately from C.E. Laboratories. The court also heard extensive testimony regarding the impact on the market value of the Bradley Group of several environmental problems. Again, each expert provided the court with varying opinions as to how these environmental liabilities affected the Bradley Group's value.

Faced with all of this conflicting evidence, the trial court concluded that the Bradley Group should be valued at $1,200,000. To be sure, it did not reach this figure by applying a pure mathematical formula. Instead, the court used pieces of testimony from certain experts, and adjusted these figures based on what it considered to be the overall weight of the evidence. For example, it discounted the evidence on the value of Verlan, Ltd. stock, finding it not credible, and concluded the value of the stock was minimal. Overall, the court placed the most weight on the evidence provided by the expert who originally valued the company at $1,450,000. The court properly observed, however, that this expert did not take into consideration the Bradley Group's full liability for its environmental problems or the value of 3-R Realty. These offsets, although they pulled in opposite directions, had the overall effect of reducing the final valuation.

As a further means of supporting its conclusion, the court noted that it gave "considerable weight" to the testimony of defendant's expert, because of her "expertise, methodology and professionalism"; this expert testified to a valuation of $735,000. When this amount is added to the $146,000 value of 3-R Realty, the total was $971,000, less than the court's final conclusion. When it considered that figure and balanced it against the higher values from other experts, along with the defects in the expert opinions, the court found the $1,200,000 valuation to be fair and fully supported by the evidence.

On appeal, plaintiff claims three errors regarding how the trial court valued these businesses: (1) it was error for the court not to identify specifically the methodology it employed in reaching its valuation conclusions; (2) the court failed to indicate what amount it assigned to environmental cleanup costs associated with the defendant's business; and (3) the court did not include the value of either 3-R Realty or Verlan, Ltd., in its final valuation. Plaintiff contends that because of these errors review of the court's conclusions is impossible, and that predictable, consistent decision-making is practically abandoned. See *Klein v. Klein*, 150 Vt. 466, 473, 555 A.2d 382, 386 (1988) (noting that different judges dealing with same case should reach essentially the same result).

As is often true in the law, and particularly in appellate decision-making, we are dealing with conflicting principles. On the one hand, findings must be adequate to support conclusions. See *Andreson v. Andreson*, 145 Vt. 634, 636, 497 A.2d 371, 373 (1985). Moreover, we will not speculate as to the basis upon which the court made its findings and reached its conclusions, where the court's decision does not spell out this basis. See *McCormick v. McCormick*, 150 Vt. 431, 438, 553 A.2d 1098, 1103 (1988); see also *Richard v. Richard*, 146 Vt. 286, 287, 501 A.2d 1190, 1190-91 (1985) ("The purpose of findings is to provide a clear statement as to what was decided and why; where no indication appears of the method employed and weight accorded various factors, remand is necessary.").

On the other hand, the court's ability to find a proper valuation is limited by the evidence put on by the parties and the credibility of that evidence. See *Klein*, 150 Vt. at 471, 555 A.2d at 385. The court is not bound to follow the opinions of expert witnesses, *Dreves v. Dreves*, 160 Vt. 330, 332, 628 A.2d 558, 560 (1993), a principle that is obvious where the testimony of experts is in conflict. Although it is better practice to specify the subsidiary facts upon which ultimate facts are based, it is not reversible error to fail to do so. See *Bonanno*, 148 Vt. at 251, 531 A.2d at 604.

In balancing these conflicting principles, we are particularly influenced by the difficult task that faced the trial judge in this case. Valuation of a closely held business "is never an easy task." *Goodrich*, 158 Vt. at 590, 613 A.2d at 205. We have upheld such a valuation as an exercise of the trial court's discretion where it was "within the range of the evidence presented." *Semprebon*, 157 Vt. at 214, 596 A.2d at 364.

██ As the trial court emphasized, the evidentiary hearings in this case were prolonged and hotly contested, consuming 14 days of trial time. The valuation of defendant's business was the subject of the testimony of four different experts, supplemented by the testimony of another expert witness on the value of 3-R Realty. The court found none of the experts on overall value to be fully credible. There is no mathematical equation that can put together pieces of opinion evidence from different expert witnesses that can compute a final valuation. The task of the court necessarily involved approximation controlled by judgment and discretion. The court explained its thinking as much as the imprecise process allowed.[1] We conclude the result is within the range of the evidence and is adequately explained.

██ Plaintiff also attacks the court's handling of specific valuation issues. Primarily, plaintiff attacks the court's handling of certain environmental cleanup obligations because it found that they reduced the value of the Bradley Group but the court did not determine the extent of the reduction.[2] The court's findings indicated that two environmental liabilities, one connected with a superfund site in Massachusetts and the other connected with its Brattleboro plant, would cost in the neighborhood of $500,000 each to resolve over some uncertain period of time. The court found that these obligations reduced the current value of the Bradley Group, and the expert witnesses did not fully consider the extent of the reduction. Thus, the court considered the environmental cleanup costs as one area that made the expert valuations too high, and took this into account in determining its overall valuation. We conclude that this issue cannot

---

[1] We have considered, but have not separately discussed in the text, plaintiff's argument that the court erred in not considering the intermixing of defendant's personal affairs with those of his corporations. The interconnections were well-known and were disclosed on the books of the Bradley Group corporations. Thus, they were considered by the expert witnesses. We do not believe that the court was required to give them special consideration since it based its valuation on the expert testimony.

[2] Plaintiff also attacks the valuation of the superfund liability because C.E. Bradley Laboratories has taken a $672,456 tax deduction for the anticipated cleanup costs. Plaintiff argues that since Bradley has already deducted the liability from its income, it would be a "double deduction" to now reduce its valuation because of the liability. As explained in the text, the court's treatment of this issue related to the valuation done by the expert witnesses. The effect of tax deduction was considered by the witnesses. The court found, however, that the witnesses understated the Bradley Group's liability for the superfund and Brattleboro cleanup obligations. The effect is not a "double deduction" as suggested by plaintiff. The tax treatment reduced Bradley's tax obligation and increased its profitability, but the obligations themselves were a long-term cost that reduced valuation. The experts properly considered the positive effect on valuation without adequately considering the negative effect.

be considered apart from the overall valuation of the Bradley Group. Having affirmed the methodology for the overall valuation, we necessarily affirm the court's handling of environmental cleanup costs.

Finally, with respect to defendant's businesses, plaintiff attacks the failure to value 3-R Realty and stock in Verlan, Ltd., owned by C.E. Bradley Laboratories. The court did value 3-R Realty and included it in determining its valuation of the Bradley Group. In the face of conflicting testimony, it declined to give a separate value to the Verlan stock, agreeing with part of the testimony that the stock was not significant in the valuation of the Bradley Group. There is no error.

We now turn to plaintiff's claim that the court erred in valuing her business, Brattleboro Printing, Inc. (BPI). The trial court heard evidence from three experts and plaintiff regarding the market value of BPI, and these opinions ranged from $200,000 to $799,646. The trial court stated that it was unable to accept one particular opinion as reflecting the true value of BPI because each of the opinions were successfully discredited by cross-examination and other evidence. Based on its combination and balancing of the methodologies presented, the trial court concluded that the market value of BPI was $475,000.

Plaintiff's arguments here are similar to those made with respect to the evaluation of defendant's businesses, and we affirm for the same reasons. The court's findings are not clearly erroneous. Under difficult circumstances, where the court did not accept the opinion of any one expert, the court's ultimate valuation is in the range of the evidence and is adequately explained.

In valuing BPI, the court relied heavily on the testimony of one of plaintiff's two experts. This expert used a discounted future cash flow analysis to estimate the selling price of BPI. Although the court found this analysis to be sound, it rejected the expert's discount rate as too high, and concluded that his deductions for obsolete equipment and a discount for marketability were inappropriate. Making adjustments for these factors, the court estimated that the value of BPI was between $400,000 and $500,000. In addition, the court placed particular emphasis on this expert's testimony that printing businesses like BPI tend to sell for between 50% and 175% of revenues, and six to ten times operating profit. The court decided that a good indicator of value could be derived by multiplying gross sales by 65%, and by

multiplying operating profit by 6.5. These calculations arrive at a market value of $475,000. The court justified its use of smaller factors because there was evidence that BPI's overall financial health and growth was declining. The court also considered the opinion of defendant's expert who used a weighted-average-of-earnings method to conclude that BPI was worth nearly $800,000. The court found that this expert's opinion that BPI would sell at eight times earnings was not justified given the evidence of BPI's declining growth rate. The court concluded that a factor of five times earnings was more appropriate, and if it used this figure in defendant's expert's original calculations, the court's earlier conclusion that the value of BPI was around $500,000 was fully supported.

█ Plaintiff also argues that the trial court abused its discretion by failing to give greater weight to BPI's June 30, 1990 balance sheet so that it could value the company as close to the date of trial as possible. See *Albarelli v. Albarelli*, 152 Vt. 46, 48, 564 A.2d 598, 599 (1989) (marital assets should be valued as close to date of trial as possible). The 1990 balance sheet was only a partial-year statement, and the court was justifiably concerned that it might not accurately reflect anticipated full-year earnings due to seasonal fluctuations and year-end adjustments. Furthermore, the trial court did factor in the decline in growth and financial health of BPI as indicated by the 1990 balance sheet when it used conservative assumptions in calculating the market value of BPI. Because the trial court's decision to give little weight to the 1990 balance sheet was adequately supported and within its broad discretion, plaintiff's argument is without merit. See *Cleverly v. Cleverly*, 147 Vt. 154, 156, 513 A.2d 612, 613 (1986).

Plaintiff's last claim of error regarding the alleged inadequacy of the trial court's findings concerns the court's valuation of the couple's marital home. Once again, the court heard significantly conflicting evidence regarding the value of this asset. Plaintiff's expert placed the value of the home at $220,000, whereas defendant's expert valued the home at $300,000. The court valued the property at $300,000. Plaintiff contends that it was error for the court to rely exclusively on defendant's expert because this opinion was submitted over a year and a half before the close of evidence, and was, therefore, "stale." In addition, plaintiff argues that the court's determination was erroneous because it failed to consider required repair costs to the property. We reject both of these arguments.

██ ██ We agree with plaintiff that as a general proposition marital assets should be valued as close to the date of trial as possible.

See *Bell v. Bell*, 162 Vt. 192, 195, 643 A.2d 846, 848 (1994); *Goodrich*, 158 Vt. at 592, 613 A.2d at 206; *Ward v. Ward*, 155 Vt. 242, 249, 583 A.2d 577, 582 (1990). Contrary to plaintiff's argument, this proposition does not hold that trial courts are obligated to accept automatically the more recent of two appraisals. Our concern is that the court's property disposition decision be based on a valuation as close to trial as possible. See *Ward*, 155 Vt. at 249, 583 A.2d at 582 (error to value property as of date of separation, rather than as of date of trial). We do not intend to restrict what evidence is admissible, or can be relied upon, to determine that valuation. Thus, in *Goodrich*, we upheld the use of testimony of a financial expert on the value of a closed corporation, even though the underlying financial data was two years old, because the expert also testified that "the ensuing years had brought little change, except for a slightly lower dividend." 158 Vt. at 592, 613 A.2d at 206. Here, the trial court relied on the earlier valuation but considered the testimony of plaintiff's expert on what had happened to valuation in the intervening two years. Its decision to accept the testimony of defendant's expert was not based on the timing of the report, but instead with its agreement with the methodology. The court found the opinion of defendant's expert to represent "the present market value" of the house. There is no error because of staleness.

Plaintiff's contention that the trial court did not consider stipulated repair costs is also without merit. The court specifically stated that it considered these costs in its final conclusion. It determined, however, that the tudor-style home belonged to an "executive class," and contained many unique features, such as cork insulation and leaded-glass windows that compensated for the property's repair needs. Because these findings are supported by the evidence, the trial court's conclusion regarding the value of the couple's marital home was not clearly erroneous. See *Cleverly*, 147 Vt. at 156, 513 A.2d at 613.

## II.

Plaintiff's next argument alleges that the trial court errone-ously denied plaintiff reimbursement for tax liability incurred by defendant in 1986 and 1987. Plaintiff contends that this liability was incurred directly from defendant's corporate earnings, but that plaintiff effectively paid the liability when the IRS seized her bank account, and when the IRS and the State of Vermont intercepted her 1989 tax refunds. Plaintiff maintains that defendant has failed to pay his share of these taxes, and therefore, she is entitled to reimburse-ment. We disagree.

In its order of March 1991, the trial court found that the couple continued to file joint tax returns for the tax years 1986 and 1987, and therefore, the tax liability incurred for those years was not solely defendant's. The court found that plaintiff's share of the liability was fully satisfied, and that all remaining liabilities should be paid by defendant. Further, the court was unpersuaded by plaintiff's evidence that the bank account was earmarked for her sole use and benefit, in large part because it remained in the name of both parties. Consequently, it found that the bank account was a joint asset that could be properly used to pay a joint obligation. As we stated above, we will not disturb trial court findings unless they are clearly erroneous. See *Semprebon*, 157 Vt. at 214, 596 A.2d at 363. Because the court's findings are supported by the record and fully justify its conclusions, the court's refusal to reimburse plaintiff for the couple's joint tax liability was not error.

## III.

Plaintiff's next claim of error concerns whether the trial court abused its discretion in failing to enforce the parties' oral agreement that defendant pay support and maintenance after their separation. The trial court found that the parties agreed informally that from the time the parties separated in August of 1986, defendant would pay plaintiff $4000 per month for both maintenance and child support. Defendant's payments pursuant to the agreement were sporadic, and after April of 1988, defendant ceased making payments altogether. In March of 1989, plaintiff filed a Motion for Issuance of a Temporary Order with respect to support and maintenance, and three months later, spousal maintenance and child support in the amount of $3000 per month were awarded to plaintiff.

Despite the court's finding that the parties had entered into a maintenance agreement, the court declined to enforce this agreement, and it denied plaintiff's request that defendant be ordered to pay plaintiff for maintenance payments in arrears. The court concluded that because plaintiff waited nearly a year to institute any action against defendant, and because it appeared that she was able to meet her household expenses during this time, no retroactive maintenance or support from defendant was required. On appeal, plaintiff argues that the trial court's refusal to enforce the parties' agreement was error.

The court found that there was an informal maintenance agreement between the parties, and because this finding is supported

by the evidence, it must be upheld. See *Cleverly*, 147 Vt. at 156, 513 A.2d at 613. The court's characterization of this agreement as "informal" does not affect its enforceability. See 1 S. Williston, A Treatise on the Law of Contracts § 1:16, at 39 (4th ed. 1990) (no significant differences between formal and informal contracts). The parties' pretrial maintenance agreement is a contract, and it can be set aside only for grounds sufficient to set aside a contract. See *Bendekgey v. Bendekgey*, 154 Vt. 193, 197, 576 A.2d 433, 435 (1990).

Absent grounds for modification, see 15 V.S.A. § 758, pretrial contracts may be set aside only upon a showing of fraud, unconscionable advantage, impossibility of performance, or hampering circumstances intervening beyond the expectation of the agreeing parties. See *Braine v. Braine*, 127 Vt. 211, 214, 243 A.2d 797, 799 (1968). Indeed, the record must demonstrate a compelling reason for the court not to accept the parties' pretrial agreement. See *Strope v. Strope*, 131 Vt. 210, 216, 303 A.2d 805, 809 (1973). The rationale for this approach is rooted in an important policy consideration. It is likely that whatever agreement a couple reaches together will be preferable to that imposed by a court, which is a stranger to the marriage. See *White v. White*, 141 Vt. 499, 502, 450 A.2d 1108, 1109 (1982).

In this case, the court did not offer any legally supportable rationale for refusing to enforce this contract. There was no evidence that the contract was fraudulent, or that it unfairly benefited plaintiff. The fact that plaintiff was not unduly burdened by defendant's failure to comply with the agreement is irrelevant. If the contract was fair, the fact that defendant might have negotiated a more advantageous bargain is not a ground to set aside an otherwise valid agreement. See *Ashcraft v. Ashcraft*, 601 N.Y.S.2d 753, 754 (App. Div. 1993).

Nor can we conclude that any delay on the part of plaintiff in filing her action against defendant constitutes a forfeiture of her rights. Laches does not arise from delay alone, but from delay that works a disadvantage to another, and defendant has not shown how he was prejudiced by plaintiff's delay. See *Stamato v. Quazzo*, 139 Vt. 155, 157, 423 A.2d 1201, 1203 (1980). A laches claim is also unavailing because there is evidence which demonstrates that plaintiff periodically requested the overdue maintenance. See *Biderman v. Biderman*, 568 N.Y.S.2d 760, 761 (App. Div. 1991). Further, plaintiff's delay cannot be construed as a waiver of her rights because waiver is

not created by mere oversight and cannot be inferred from silence. See *Barringer v. Donahue*, 562 N.Y.S.2d 531, 533 (App. Div. 1990). Instead, waiver requires proof of a voluntary and intentional relinquishment of a known and enforceable right. See *id.* No such showing has been made against plaintiff, and it was error for the trial court to refuse to enforce the parties' agreement on this basis.

Our opinion on this issue in no way suggests that oral or informal pretrial agreements are always the preferred method of settling maintenance and property distribution matters. Here, however, where the trial court found that such an agreement existed, and evidence in the record supports this finding, the court can refuse to enforce the agreement only for grounds applicable to contracts generally. This analytical approach is not novel; other jurisdictions employ a similar framework for oral and informal agreements between divorcing spouses. See, e.g., *Brash v. Brash*, 551 N.E.2d 523, 526 (Mass. 1990) (oral agreement would have been valid but for its unconscionability). We must, therefore, reverse the trial court's refusal to enforce the parties' pretrial maintenance agreement and remand for calculation of the arrearage.

## IV.

■ Finally, plaintiff claims that the trial court improperly ignored the time value of money when it permitted defendant to pay plaintiff's equitable settlement award in semi-annual installments over a ten-year period. In its order dated March 1991, the court determined that an equal division of the assets between the parties was proper, and it divided the couple's marital property 50% to each party. Because the value of the existing assets decreed to defendant was significantly higher than those decreed to plaintiff, the trial court ordered defendant to pay plaintiff $317,000 in lieu of property. The court went on to provide that the "sum shall be paid in 20 equal installments of $15,850.00 beginning June 30, 1991, and continuing each and every six months thereafter until paid in full." The aggregate amount that will be paid in installments will be $317,000. Because the money is to be paid in installments, however, the present value of the payments will be much less. Plaintiff asserts that the actual value of the award is $189,000 and results in an unequal property distribution despite the court's pronouncement to the contrary. Arguing that this internal inconsistency cannot stand, she urges us to increase the payments to reach a present value of $317,000.

If the matter had ended with the initial order, there is no question that plaintiff is correct. In *Williams v. Williams*, 158 Vt. 574, 578-79,

613 A.2d 200, 202 (1992), we held that when a party will not receive a fixed sum until some time in the future, the court must add interest to account for the lost value over time. Whatever the current value of the installments the court ordered, it does not approach the $317,000 needed to produce the equitable distribution arrived at.

The court dealt with the issue, however, in a post-trial order. In response to plaintiff's claim that the installments should earn interest, the court declined to change the order, giving three main reasons for its actions: (1) defendant does not have the ability to pay the interest requested in view of the other obligations he faces; (2) an award of interest would change the maintenance award; and (3) if the division is unequal without interest, the inequality "is not of such significance that the court feels it needs to be addressed." In favor of the court's action, we note that the trial court is accorded broad discretion to determine what constitutes an equitable division of the marital property. See *Semprebon*, 157 Vt. at 215, 596 A.2d at 364. Although the result must be equitable, equal division of marital property is not required. See *Goodrich*, 158 Vt. at 593, 613 A.2d at 206.

The court's discretion is not unlimited, however, and we have required that findings provide a clear description of what was decided and why. See *Dreves v. Dreves*, 160 Vt. at 333, 628 A.2d at 560. In this case, we are unable to accept the explanations the court gave for upholding the original award. Although the court was not required to make an equal distribution of property, it clearly stated it was doing so. Its failure to account for the time value of money makes the final award much less advantageous to plaintiff. With $100,000 or more at stake, we cannot call the issue insignificant as the trial court did. Plaintiff is not required to show a "need" for money necessary to bring about the equal division of property the court awarded.

Further, if the main concern was defendant's ability to pay, the court could have restructured the payments to respond. Finally, even if there is an effect on maintenance, plaintiff by this appeal has agreed to open the maintenance decree to consideration of that effect.

Because of the error with respect to the installment payments, we reverse the property award, and reopen the maintenance award, for further proceedings to respond to the error.

*Reversed and remanded for proceedings not inconsistent with this opinion.*