*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-098

AUGUST TERM, 2011

| | | |
|---|---|---|
| John Viskup | } | APPEALED FROM: |
| | } | |
| v. | } | Superior Court, Chittenden Unit, |
| | } | Family Division |
| | } | |
| Juliane Viskup | } | DOCKET NO. F719-8-09 Cndm |

Trial Judge: M. Patricia Zimmerman

In the above-entitled cause, the Clerk will enter:

Husband appeals from the trial court's final divorce order. He argues that the court improperly considered his post-separation conduct in reaching its decision, and it erred in dividing the marital assets. We affirm.

The court found as follows. Husband and wife were married for four years. Husband was sixty-eight at the time of the court's order; wife was fifty-five. Husband is a dentist who retired in September 2006. His income was substantial. Wife is an attorney and also works as a consultant. Both parties entered the marriage with assets, although husband had many more assets than wife. At the time of the marriage, wife owned a home with $200,000 in equity; she also held certain investments and stocks. Husband owned numerous properties, including a home valued at $2,250,000, with net equity of $1,885,000. There was currently a mortgage of $181,000 and a $200,000 line of credit on this property. This property was in both parties' names and was listed for sale for $2,750,000. The court found that the $200,000 credit line had been taken out in February 2008 to provide access to funds because husband had no salary income, he was not collecting Social Security, and wife was working two part-time jobs. The court found this to be a joint marital debt. As discussed below, the court held husband responsible for this obligation. Wife agreed to assume $76,000 in outstanding credit card debt. By agreement, the parties each kept the real property they brought to the marriage. Each party was also awarded his or her own checking and savings accounts, stocks, retirement accounts, and business interests, as well as vehicles, farm equipment, trailers, and boat.

The court detailed various marital expenditures and investments in its order. It explained that significant trial time had been consumed in discussing a $20,000 transaction in which money was transferred between an account held by husband, one held by wife, and one held by wife's ex-husband. The documentation was signed by wife without husband's knowledge. Ultimately, the $20,000 was returned to husband's account. The court found that this appeared to be a complicated straw transaction designed to cover the parties' expenses with the intent to avoid a penalty to husband's account. The court recognized that husband believed that this was a criminal act, but it did not so find. The court also recounted that during the marriage, the parties invested $100,000 in a company called Vermont Global, LLC. Husband invested $20,000 and wife invested $80,000 by refinancing her property in Williston. Husband did not agree to invest

$80,000. Wife also invested $20,000 in another related company. Neither of these companies has any present value.

As to the respective merits of the parties, the court found that husband engaged in a pattern of retribution after the parties' separation that included threatening wife with criminal prosecution and engaging in a persistent and disparaging letter writing campaign to wife's family, friends, business colleagues, and employer. Husband also feigned a suicide threat to gain wife's attention, knowing that she was particularly susceptible to such threats. Husband vowed to "drag [wife] through the mud" rather than reach any divorce settlement and expressed his willingness to pay whatever legal fees that would entail. As noted above, husband had been pursuing criminal charges against wife since their separation, alleging that she stole marital assets. The court found, based on the credible testimony and its observations during trial, that husband was an angry individual who could not tolerate personal rejection and would not accept any responsibility for the financial position of the parties.

The court explained that, largely by agreement, husband would be receiving approximately $4,000,000 in marital assets (90%), while wife received $450,000 in assets (10%). Wife had entered the marriage owning less than 20% of the joint assets. During the marriage, however, wife was a wage earner, and she was responsible for determining how the parties would pay for the extraordinary expenses of maintaining their real estate properties and farms. The court found that wife would need approximately $350,000 to put her in the same financial position that she enjoyed during the marriage, and it ordered husband to pay this sum to wife. In other words, this brought wife's share of the marital estate to approximately 18%. The court reiterated that the $200,000 line of credit on the marital home had been used to provide cash flow for marital expenses. While wife had been making interest-only payments on this debt, the court found that she should not remain responsible for this obligation given that the money was used to support the parties' lifestyle. Additionally, the debt was secured on multi-million dollar property that had been awarded to husband. The court explained that any financial responsibility for this line of credit was partially offset by the respective merits of the parties and by wife assuming payment of $76,000 in credit card debt. Husband appealed from the court's order.

Husband argues that the court erred in considering his post-separation conduct in evaluating the respective merits of the parties under 15 V.S.A. § 751(b)(12). He suggests that allowing the court to consider such evidence will "open up a pandora's box." Husband also asserts that wife should be solely responsible for a bad investment made during the marriage.

We have repeatedly held that the "disposition of property pursuant to a divorce decree is a matter of wide discretion for the trial court." Lalumiere v. Lalumiere, 149 Vt. 469, 471 (1988). We will uphold the trial court's decision unless its discretion was abused, withheld, or exercised on clearly untenable grounds. Chilkott v. Chilkott, 158 Vt. 193, 198 (1992). All that is required is that the distribution of marital property be equitable. Lalumiere, 149 Vt. at 471.

The court's award was eminently equitable here. The court recognized that this was a short-term marriage and that husband entered the marriage with more assets than wife. At the same time, however, it found that wife was a wage earner during the marriage and that she had been responsible for overseeing financial obligations for the parties' numerous real estate holdings. By agreement, each party was awarded the real property that they held at the time of the marriage. They each retained their own bank accounts, stocks, business interests, and retirement accounts. Wife assumed $76,000 in credit card debt while husband was responsible for the $200,000 line of credit on the marital home. In the end, husband received approximately

80% of the marital assets, while wife received 20%. Given this gross disparity, it is difficult to countenance husband's argument that the award is inequitable.

We reject husband's assertion that the court erred in considering his post-separation behavior in reaching its conclusion. By statute, the court may consider "all relevant factors" in equitably dividing marital property, including but not limited to "the respective merits of the parties." 15 V.S.A. § 751(b)(12). The plain language of the statute does not limit the court's analysis to a party's conduct during the marriage, and we have never so held. To the contrary, we emphasized in Cleverly v. Cleverly, that our decision therein "should not be construed as a holding that, as a matter of law, the post-separation conduct of parties to a divorce proceeding may never be considered by the court." 147 Vt. 154, 157 (1986); see also Allen v. Allen, 132 Vt. 182, 185-86 (1974) (affirming distribution of marital property as equitable despite wife's contention that evidence of her actions after filing for divorce were irrelevant and should not have been considered in distributing marital estate).

In Cleverly, we reversed the trial court's property division because its findings regarding fault and husband's abandonment of wife were not supported by the evidence. 147 Vt. at 156-57. The same cannot be said here. While husband disagrees with the court's characterization of his behavior, the court's findings as to his behavior are well-supported by the record. Among other things, husband attempted to ruin wife's reputation with her employer and her colleagues. Essentially, he tried to put her in a worse position going forward. The court acted well within its discretion in finding husband's conduct relevant in allocating a $200,000 marital debt, a debt which, as the trial court found, was secured by husband's multi-million dollar home and partially offset by wife's assumption of $76,000 in credit card debt. Husband fails to show that the court's consideration of this evidence resulted in an inequitable division of the marital estate.

We similarly reject husband's claim that the court should have held wife solely responsible for the losses suffered through the investment in Vermont Global, LLC. Certainly, one could point to numerous financial decisions made by husband during the marriage that wife might deem unnecessary or unfair. Husband spent $40,000 on his daughter's wedding, for example, and hundreds of thousands of dollars improving real estate that he was awarded as part of the final divorce order. Indeed, we note that 80% of the investment in Vermont Global was funded by wife refinancing her own property, property that she was awarded in the final divorce order. In any event, the trial court was not persuaded by husband's claim on this point, and it is the exclusive role of the trial court to weigh the evidence. See Kanaan v. Kanaan, 163 Vt. 402, 405 (1995) (trial court's findings entitled to wide deference on review because it is in unique position to assess the credibility of witnesses and weigh the evidence presented). We find no grounds to disturb the court's decision.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice


_____
Denise R. Johnson, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice