*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-012

JUNE TERM, 2013

| | | |
|---|---|---|
| Michele Tattoli | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Rutland Unit, |
| v. | } | Family Division |
| | } | |
| | } | |
| Christopher Colm | } | DOCKET NO. 413-9-11 Rddm |

Trial Judge: Nancy S. Corsones

In the above-entitled cause, the Clerk will enter:

Father appeals pro se from the trial court's order awarding mother primary parental rights and responsibilities (PR&R) in the parties' minor daughter. We affirm.

The court made the following findings. Mother and father married in 2007 and separated in 2011. Their daughter was born in March 2010. Father also has a nineteen-year-old daughter from a previous relationship, whom he raised and who lives in the marital home. Mother is thirty-seven years old and works part-time as a dental hygienist. Father is fifty-three years old and works as a case manager for mentally ill individuals at Spring Lake Ranch. Mother was born and raised in New Jersey. Her family and friends still live there, and mother returns to New Jersey as often as she can. Father was born and raised in Vermont. Father's family all live within an hour of the marital home, and father is very close to his family. The child has bonded with both mother's and father's extended families.

Mother and father met online. Mother moved to Vermont to be with father, but there was an ongoing dialogue about moving to New Jersey at some point in time. Mother decided to move to Vermont in large part because she anticipated returning to live in New Jersey with father, probably when father's adult daughter graduated from high school.

Mother was diagnosed with chronic depression many years ago. Mother had been steadily taking appropriate prescription medication since that time and her depression in no way affected her ability to get an education or a job, or be a productive and successful member of society and an excellent parent. The court found it puzzling that father raised the issue of mother's depression at the hearing given his work as a case manager for mentally ill individuals. The court found no evidence whatsoever that made mother's depression relevant to her parenting ability. On the other hand, the court found father's decision to raise this issue relevant in determining which parent had the superior ability and disposition to foster a positive relationship and frequent and continuing contact with the other parent.

After the parties' child was born, mother stayed home for eight weeks. She returned to work two days per week, and father stayed home with the child on these days. The child was then enrolled in day

care.  Because the child had attended a day care center since she was four months old, she was bonded to some of her long-term caregivers and had established a good routine.

After the child was born, father began insisting that Saturdays were "his" days, and he was not receptive to any events taking place that he did not approve of in advance.  Father also began to take long bike rides, sometimes for hours on end, which left mother feeling isolated.  Marital problems developed, and mother began pressing the issue of moving out of the rural town in which they lived, at least into Rutland.  Mother felt that father was stonewalling her on this issue and that he was not living up to his agreement to move back to New Jersey.  Father told mother that he would not move at least for another twelve years.  When father said this, mother  made plans to separate and divorce.

After the parties separated, mother thought the parties had reached an agreement regarding parent-child contact.  They were attempting mediation.  On a day that father had visitation, he emailed mother and told her that he was keeping the child in derogation of the parties' agreement.  The child was still nursing during this period.  Mother filed an emergency motion to have the child returned to her, which was granted.

The court explained that, as a general matter, the parties were unable to communicate about seemingly fundamental concerns for a small child, such as toilet training.  The court also found that father would unjustifiably harass mother about the child's napping schedule.  Father also had angry outbursts, and he was persistent in arguing that everything had to be precisely equal.  This included the establishment of a pickup/dropoff point, for example, which was precisely equidistant between the parties' home but "in the middle of nowhere," and his insistence on dividing the action of taking the child out of her car seat and putting her in her car seat.  The court also noted that father had a bumper sticker on his car that said "Don't Jersey Vermont," but he did not seem to realize that this could have an impact on the child.  He bought the child a t-shirt with the same logo.

The court found that father showed very poor judgment taking the child on a trampoline when she was eight weeks old.  It found the risk to a baby's brain in being on a trampoline glaringly obvious.  The court also found that father showed poor judgment in wanting to take the child on a bike ride when she was five months old.  He proposed propping her up with a pillow in a seat behind him.  Mother forbade him from doing so.  Father also showed poor judgment in attempting to drive across a lake that he thought was frozen but was not.  Finally, on at least two occasions since the baby's birth, father had attempted to drive with the child in the car while under the influence of marijuana.  All of these actions caused the court to question father's judgment.  The court observed that father appeared eager to publicly display himself as a really great father and show that he was genuinely equal to mother in terms of caregiving.  While acknowledging father's love for his child, the court found father had engaged in physically risky behavior that could have harmed the child.  Additionally, the court noted that father had not been honest with mother about day care payments.  It explained that the parties had agreed to split the cost of day care.  Mother later discovered that father had obtained a subsidy to defray his daycare cost.  Before mother learned this, she asked father to pay some accrued medical bills.  Father responded that mother should pay for the medical bills as he was paying for day care, which he clearly was not doing.

With these findings in mind, the court turned to the statutory best-interest factors.  See 15 V.S.A. § 665.  It found the parents equal with respect to many of the factors, but concluded that mother was better able and disposed to ensure that the child lived in a safe environment and received appropriate medical care.  Additionally, the court found that mother would be the more supportive

2

parent in terms of parent-child contact if she were the primary custodian, which was a very important factor in a relocation case. The court recognized that the child was bonded to both of her home environments, and that a change could potentially be stressful for her, but it was mindful of mother's testimony that the child appeared to handle transitions well enough and was a resilient child. The court also found mother better equipped to foster a positive relationship and frequent and continuing contact than father. The court rested this finding in large part on father's unilateral decision to keep the child right after the parties separated, despite a verbal agreement regarding contact, because he determined that it was "fair" to keep her until a court hearing was held. The court found father's behavior not in the child's best interests. Even when the court-ordered visitation schedule was in place, father tended to "push" on the issues of pickup and drop-off, which he perceived to be a fairness issue. Mother was better able and more disposed to merely abide by a schedule without difficulty. For these reasons, the court concluded that it was in the child's best interests for mother to be her primary legal and physical custodian.

As to parent-child contact, the court recognized that mother intended to relocate to New Jersey, which would result in a greatly reduced schedule of contact for father. It considered the child's age as well as the difficulties and expense involved with long-distance travel. It found that regular online communication would help but that the child should spend blocks of time with each parent. The court also recognized that both parents worked during the day and that it was doubtful that father could take time off each time the child visited him. Thus, to minimize transitions, maximize time, and give the child the opportunity to spend quality time with father and his family, the court found mother's proposal of visitation one week each month in the child's best interests. The court also afforded father additional visitation rights should he travel to New Jersey. Father appealed from the court's order.

In his brief, father essentially advances his version of the facts. He quarrels with the court's findings, and offers additional explanations for his behavior. He maintains, among other things, that the court erred in finding that the parties had agreed to move to New Jersey and erred in basing its custody decision on this point. He asserts that allowing mother to move with the child to New Jersey is not in the child's best interests. Father also suggests that the court engaged in gender bias. Additionally, he maintains that the court improperly acted as a medical health expert.

The trial court has broad discretion in a custody matter, and we must affirm unless the discretion is "erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence." Jensen v. Jensen, 141 Vt. 580, 581-82 (1982) (citations omitted). Father fails to show that the court's findings are clearly erroneous, and he fails to demonstrate an abuse of discretion. Many if not most of father's arguments go to the weight of the evidence and the credibility of witnesses, matters reserved exclusively for the trial court. See Kanaan v. Kanaan, 163 Vt. 402, 405 (1995). Father asserts, for example, that he had a good reason for bringing up mother's depression. The court found otherwise, and acted within its discretion in doing so. Father offers his own explanations as to other findings made by the trial court, explaining in great detail his approach to toilet training, for example, and why he was frustrated by the child's napping schedule. Again, it is for the trial court, as the finder of fact, to resolve issues like these. As to father's more specific arguments, mother testified that she had moved to Vermont because father agreed that they would not live there permanently. She stated that after she got pregnant, father agreed that they would move to New Jersey. The court's findings to this effect are thus supported by the record. Contrary to father's assertion, the court did not base its custody decision on this agreement. Instead, it properly looked to the statutory best-interest factors in determining which parent would have sole PR&R. The court acknowledged that

this was a close case, but it found that several of the factors favored mother. Father's disagreement with the court's conclusion does not demonstrate an abuse of discretion.

As to father's claim of bias, father asserts that the court asked certain questions of mother but not of him. He maintains that the court did not seem to like him, and did not have a high regard for his role in the child's life. He cites as an example the court's questioning of mother about the proposed visitation schedule. There was nothing inappropriate about the court's inquiry, and father had ample opportunity to explain what he, as the child's father, felt to be the best visitation schedule. The record does not support any claim of bias. See Ball v. Melsur Corp., 161 Vt. 35, 45 (1993) (stating that "bias or prejudice must be clearly established by the record," and "that contrary rulings alone, no matter how numerous or erroneous, do not suffice to show prejudice or bias").

Finally, we reject father's assertion that the court improperly acted as a medical health expert. Father appears to make this argument with respect to the court's observation about father's reluctance to use antibiotics in treating the child's ear infections, the court's reaction to his decision to take the child on a trampoline, and his decision to raise mother's depression at the hearing. The court did not act as an expert. It simply relied on its own common sense and life experience in reaching its conclusions. See Bissonette v. Gambrel, 152 Vt. 67, 69-70 (1989) (noting that in evaluating child's best interests, trial judge may rely upon his or her own common sense, experience in life, and the common experience of mankind). To the extent that father challenges the visitation schedule, he fails to show any abuse of discretion. See Cleverly v. Cleverly, 151 Vt. 351, 355-56 (1989) (the pattern of visitation adopted will not be reversed unless the trial court's discretion "was exercised upon unfounded considerations or to an extent clearly unreasonable upon the facts presented" (quotation omitted)). We have reviewed all arguments discernible in father's brief and find them all without merit. In reaching our decision, we have considered, as we must, only the evidence that was presented to the trial court. See, e.g., Hoover v. Hoover, 171 Vt. 256, 258 (2000) (Supreme Court's review on appeal is confined to the record and evidence adduced at trial; Court cannot consider facts not in the record).

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice

4