VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.    24-AP-071



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

OCTOBER TERM,   2024

Aron Steward\* v. Marlon Fisher

}     APPEALED FROM:
}     Superior Court, Chittenden Unit,
}     Family Division
}     CASE NO. 21-DM-02045
      Trial Judge: Thomas Carlson

In the above-entitled cause, the Clerk will enter:

Mother appeals from the trial court's final divorce order.  She argues that the court erred in awarding father primary physical and legal rights and responsibilities (PRR) in the parties' children and dividing the marital estate.  We affirm.

The parties married in May 2015.  They have two children, born in July 2016 and February 2018.  Mother initiated this action in July 2021.  Following a hearing, the court made numerous findings, including the following.  Mother is in her early forties and in good health.  She works as the Chief of Psychology at a hospital, earning approximately $175,000 annually, plus benefits.  Mother also had a consulting business.  Mother testified that the business ceased operations in late 2022, but the court noted that mother received about $47,000 in payments from this business after the divorce hearing in April 2023.  Father is in his early forties and also in good health.  Father stopped working in 2016 after the parties' first child was born.  He returned to work after the parties' second child was born.  Father was the children's primary caretaker and primarily responsible for the children's medical appointments, daycare, and school arrangements.  Mother worked long hours and father had a more flexible schedule.  Father currently works in development at a school and performs comedy on the side.  He earns about $60,000 per year plus benefits.  Father also receives monthly disability benefits of about $2200 from his military service.

While each parent agreed that the other was a good parent, the court found that mother's case was almost totally preoccupied with allegations and insinuations about father as a person.  Mother based her arguments regarding PRR and property division on those allegations.  The court rejected mother's allegations as essentially unfounded.  It acknowledged that mother submitted disturbing recordings of father yelling and cursing her in front of the children, making the children cry, calling one of the children weak for crying, and telling them their mother did not really love them.  The court found that father lost his temper with mother and raised his voice with harsh words.  Nonetheless, based on its review of the totality of the evidence, the court considered this a complex relationship in which mother's relatively simple narrative of being the

victim of abuse perpetrated by an overbearing man did not ring true. Even in the recordings, the court explained, it had the impression that mother repeatedly pursued father despite his requests to be left alone and that she had, with her presence and words, actually triggered his rage as much as anything else, and happened to be recording it all. The court found that mother belittled father at nearly every opportunity in her testimony in areas largely unrelated to his parenting while her testimony was remarkably devoid of references to the children. It contrasted mother's testimony with that provided by father, who focused on the children. The court found father's testimony about his love and care for the children corroborated by third-party witnesses who were close friends of both parties. Those same witnesses each concluded that mother was trying to build and perpetuate a false narrative about father. The court noted that mother appeared to have engaged in a pattern of unsubstantiated complaints about father and her requests for relief from abuse, both of which were withdrawn in favor of agreements, appeared in hindsight to be more strategic than substantive. The court made numerous additional findings on this subject, which we do not repeat here. The court ultimately determined that father had been a great parent and that mother's attacks on him as a bad person, including being an abusive partner and father, were not proven.

Each parent sought primary legal and physical PRR, and the court concluded that the statutory best-interest factors favored an award to father. It found that both parents had a loving and supportive relationship with the children. They could both meet the children's physical and developmental needs, but father had the stronger ability and disposition to do so. Father also had a stronger ability and disposition to support the children's relationship with mother as evidenced by the variety of mother's unsubstantiated attacks on father. Father had been the children's primary care provider. Mother had been and continued to be the primary wage earner and a busy professional, while also playing an active role in the boys' lives. Parents were not generally inclined to communicate or cooperate well with one another. The court found no evidence of significant abuse of the children. The court awarded father primary legal and physical PRR with mother having parent-child contact half of the time.

Turning to property division, the court concluded that the marital estate should be divided equally. The total marital estate was valued at approximately $620,000, not including mother's three pre-retirement accounts that father agreed did not need to be divided. The court found that the parties had contributed equally to the equity in the marital home. It rejected mother's assertion that the value of improvements should be excluded from the property division because mother was somehow forced or manipulated into making the improvements or that father should receive only a small portion of the home's equity. The court also rejected mother's assertion that father "purposefully and intentionally drained [their] joint account" in the fall of 2022, including by "going out" and "engaging in a pattern of financial abuse." Based on its review of the evidence, the court found that father's expenditures appeared to have been focused on setting up a new household after he agreed in September 2022 that mother would have sole use of the marital home. The court noted, by contrast, that mother made a series of unexplained withdrawals of tens of thousands of dollars during this period, which she said was "to reimburse [her] business account."

The court considered the statutory factors relevant to the division of marital property. It found that this was a relatively short-term marriage with the vast majority of assets accumulated during the marriage. The parties were relatively young and healthy. They both had solid employment and prospects, though mother clearly had greater prospects for both income and future asset acquisition by virtue of her professional degrees and experience. Father agreed that mother could retain the marital home if he received a fair share of the equity. Mother was the

2

greater source of income and asset accumulation during the marriage while father was the greater provider in caring for the home and children. There was no clear or significant imbalance in the merits of the parties. As indicated above, the court divided the assets equally. It also found father entitled to spousal support of $1300 per month until he either received a lump sum payment of his share of the equity in the marital home or a child-support order was issued. This appeal followed.

Mother first argues that the court should have credited her testimony that father was abusive. She cites evidence that she believes supports her position, such as temporary relief-from-abuse orders that she obtained and her testimony at the hearing. She challenges the court's finding that she engaged in a pattern of unsubstantiated complaints about father. According to mother, she acted reasonably in making reports about father, specifically, by reporting father to the Department for Children and Families for alleged child abuse in connection with father's disagreement with another parent at the children's basketball camp and by filing a complaint against father with the police in this same timeframe. In a related vein, mother argues that the court erroneously found that she "provoked [father] into abusing her and the children" and that the abuse was "justified." She challenges the court's conclusion that father was better able to foster a positive relationship with her than the reverse. Mother also argues that the court erred in finding father to be the children's primary care provider and noting that he had been primarily responsible for making and keeping the children's medical appointments. She again provides her view of the evidence, asserting that father was working and attending college online for part of the time and thus could not have been the children's primary care provider. She contends that the court should have weighed the evidence differently with respect to who scheduled and transported the children to medical appointments.

Our review of the trial court's decision is deferential. We consider the trial court's factual findings "in the light most favorable to the prevailing party below, disregarding the effect of any modifying evidence." Spaulding v. Butler, 172 Vt. 467, 475 (2001) (citation omitted). "We will uphold factual findings if supported by credible evidence, and the court's conclusions will stand if the factual findings support them." Id. (citation omitted). "The trial court has broad discretion in a custody matter, and we must affirm unless the discretion is erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence." Myott v. Myott, 149 Vt. 573, 578 (1988) (quotation omitted).

Mother fails to show any error or abuse of discretion here. She essentially challenges the trial court's assessment of the weight of the evidence and the credibility of witnesses, matters reserved exclusively for the trial court. See Kanaan v. Kanaan, 163 Vt. 402, 405 (1995) (recognizing trial court's "unique position to assess the credibility of the witnesses and the weight of the evidence presented"). The court considered the evidence referenced by mother and found it unpersuasive. It did not find that father was "justified in abusing mother," as she asserts. It acknowledged that mother submitted recordings that were disturbing but it considered that evidence in the context of the evidence as a whole, as described in its decision. The court acted within its discretion in finding that mother's attacks on father, including those referenced by mother above, said more about mother than father. It detailed in its decision how mother, in her direct testimony, belittled father at nearly every opportunity even as she acknowledged near the end of the hearing that father "was an incredible father when [she was] not involved." The court's conclusion that father was better suited than mother to foster a positive relationship is supported by its findings and the evidence. Its finding that father was the children's primary care provider is also supported by the evidence. As the court explained, for years, father woke the children, fed them, and transported them to school while mother left home at 7:00 a.m. and

returned around dinnertime. Father testified that he brought the children to their medical appointments more often than mother, and the court so found, noting as well that father's schedule was more flexible than mother's schedule. While mother disagrees with the court's assessment of the evidence, she fails to show that its findings are clearly erroneous or that it abused its discretion in reaching its conclusions.

Mother's challenge to the property division is premised on her argument that the court should have factored father's "history of domestic violence" into its distribution. We reject the premise of her argument. The court did not find a history of domestic violence here and it acted within its discretion in so finding. Mother also argues that the court erred by failing to consider father's "outrageous spending as dissipating the marital assets." The court considered and rejected this argument below. It did not find father's spending outrageous but rather found it consistent with setting up a new household after he was required to move out of the marital home. While mother disagrees with this assessment, she fails to show that the court's finding is clearly erroneous. There was no error in the court's decision.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Harold E. Eaton, Jr., Associate Justice

William D. Cohen, Associate Justice

4