## Samuel Owen Schwartz v. Ethel Seldin-Schwartz

[685 A.2d 665]

No. 96-048

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed October 11, 1996

*Katherine A. Hayes* of *Barr, Sternberg & Moss, P.C.*, Bennington, for Plaintiff-Appellee.

*Deborah S. Banse* and *Peter H. Banse* of *Banse & Banse, P.C.*, Manchester, for Defendant-Appellant.

**Allen, C.J.** Defendant wife appeals from a final divorce order of the Bennington Family Court, challenging the court's findings and its

property and maintenance awards. Plaintiff husband cross-appeals also challenging the court's property award. We affirm in part, vacate the property settlement and maintenance awards, and remand for further proceedings consistent with the views expressed herein.

Husband and wife married in March 1967. It was the second marriage for each, and both have adult children from their prior marriages. Since spring of 1992, husband has resided at Equinox Terrace, an assisted living facility in Manchester, Vermont. Wife currently resides on Long Island in the marital home.

Husband is seventy-five years old and in poor health. He suffered permanent brain damage in a work-related accident in 1983. Because of his head injury, he is rated as totally disabled and is currently neither employed nor employable. Prior to the accident he was employed as an electrical engineer for thirty-five years.

Wife is age sixty-nine. Although she is able to function, her health is poor. She has heart trouble and takes medication for cholesterol, hypothyroidism, and hypertension. After husband's accident, wife spent seven and a half years at home caring for husband, who, as the trial court found, "required supervision and extensive assistance with his care." Because wife became overworked and in need of respite, she brought husband to a facility in Florida for the winter of 1991-92. Wife then asked husband not to return home. He left Florida and subsequently moved to Equinox Terrace.

In March 1992, husband's daughters met with counsel. Wife's power of attorney was revoked. She was removed from husband's will and from his life insurance policy. Her name was also eliminated as the designated payee for husband's benefits. The court found "that it was not without justification that the daughters became concerned." It found that wife had "spent down substantial marital assets." Merrill Lynch funds that were producing income of approximately $8,000 per year disappeared "without adequate explanation." Although two notices were sent to wife in June and September 1992 that her power of attorney had been revoked, she later removed half of a $34,000 Merrill Lynch account that had been established from the proceeds of husband's personal injury settlement. In 1994, wife removed husband's name from title to the marital home and took title in her name alone. She then refinanced an existing mortgage, receiving proceeds in the amount of $112,000 and leaving equity in the home of $100,000. The court described the use of the power of attorney as "fraudulent." Although the court found an expenditure by wife of $41,000 for repairs to the residence justifiable, it found wife's

explanations regarding the Merrill Lynch accounts and the use of the mortgage proceeds "unsatisfactory."

In determining property settlement and maintenance awards, the court observed that prior to the accident, the couple lived on approximately $60,000 to $70,000 income and "lived well within their means." After the accident, husband's income dropped. Wife spent substantial amounts of time and energy at home caring for husband. Because of this commitment, her ability to pursue a counseling career was limited, as she was required to practice within the home. The court noted that because of the income reduction since 1983, "neither party is really able to live in the lifestyle to which he or she was accustomed and their standard of living established up until 1983 simply cannot be replicated."

The court found that husband has monthly income of approximately $3,600, consisting of workers' compensation, social security, and pension. He has monthly expenses of approximately $1,000. The court found that wife earns $800 per month as a family counselor and receives $364 per month in social security. It further found that she could receive $750 per month in rental income for apartments in the house. Although wife reported expenses of $5,770 per month, the court found this estimate incredible as it was "well over the annual expenses of the parties[,] even the annual income of the parties in their best years" and "beyond anything that this marriage can afford."

In light of the parties' income and expenses, the court awarded wife $1,600 per month in maintenance. It awarded the marital home, which has a fair market value of $260,000 and equity of $100,000, to wife. She also received a car valued at $12,000, furniture valued at $5,000, a checking account with a balance of $1,000, and jewelry. The court awarded husband a money judgment against wife of $50,000, furniture valued at $1,000, his social security and workers' compensation income, and bank accounts totaling approximately $20,000.

Wife argues that several of the findings of the trial court are not supported by the evidence. We will not disturb the court's findings unless they are clearly erroneous. V.R.C.P. 52(a)(2). A review of the record reveals that the questioned findings are amply supported by testimony and therefore are not clearly erroneous.

Wife first questions the finding that husband will benefit, and his condition is more likely to improve, in a setting in which more stimulation and companionship are available than in his present setting at Equinox Terrace. Husband's daughter testified that her

father had expressed an interest in moving to a larger facility that offered a greater opportunity to socialize. Socialization and recreational opportunities are limited at his current facility because of the small number of residents and the low range of cognitive functioning of those residents. She further testified that he is one of the most high-functioning people at his current facility. Husband's physician recommended a facility with more recreational activities for retired professionals who continue to be mentally and physically active. Husband's other daughter, a physician, testified that because of husband's current financial situation, such a facility was not an option. She also stated that he belongs in a facility where he will be with higher-functioning people and that he is neither "optimally stimulated" by the residents in his current setting, nor does he have adequate recreational options. The sum of the evidence is sufficient to support the finding that a facility offering more stimulation and companionship will benefit husband.

Second, wife argues that the court erred in finding that wife may rent portions of the marital home for a minimum of $750 per month. Wife herself testified that in the past she had rented one area of the house for $300 per month and the basement for $550. Both of husband's daughters also testified that wife previously had received rents totaling more than $750 per month. The court therefore was within its discretion in making its finding as to wife's rental opportunities.

The third finding questioned by wife involves the court's statement that husband's daughters were justified in becoming concerned about husband's financial situation because wife "had spent down substantial marital assets . . . without adequate explanation." Wife admitted that after husband's accident she was the only person who had access to the Merrill Lynch funds in question. Although wife failed to produce complete 1992 and 1993 income tax returns, the returns that she did produce show a substantial decrease in the amount of declared income. Wife testified that the funds no longer exist and that she "probably used" them. Given this evidence, the trial court's conclusion that wife depleted a large portion of the marital assets without sufficient justification is well-founded.

The last finding challenged by wife states that wife "wrongfully diverted" from husband $50,000 of the mortgage proceeds that were received when wife refinanced the marital home. Wife testified that she and husband owned the residence as tenants in common. Despite the fact that two letters were sent to wife notifying her that husband

had revoked her power of attorney, wife testified that she was not aware of the revocation when she transfered the residence into her name alone and refinanced the existing mortgage. Wife admitted that she relied on the revoked power of attorney so that she could obtain all of the mortgage proceeds. Wife did not notify husband of the transfer or the refinancing until required to do so in interrogatories. Wife further stated that she spent all of the proceeds received from the refinancing. The court's finding that wife "wrongfully diverted" husband's share of the mortgage proceeds is sufficiently supported by the evidence and, like the other findings challenged by wife, not clearly erroneous.

Wife next argues that the trial court lacked authority to award a money judgment for fraud in lieu of a property settlement. In its final order, the court awarded to husband "by way of property a judgment for cash in the amount of $50,000." The court characterized the award as "the proceeds of the mortgage loan which [were] wrongfully diverted from [husband]." Under 15 V.S.A. § 751(a), the court is required to "equitably divide" the property of the parties. Because the statute describes the court's authority to distribute property in terms of *dividing* it between the parties, it is a prerequisite to the exercise of that power that the property to be divided actually exists. See *Street v. Street*, 575 So. 2d 1142, 1144 (Ala. Civ. App. 1991) (affirming trial court's refusal to distribute proceeds from sale of house where testimony indicated that proceeds had been spent and "were no longer before the court"); *St. Laurent v. St. Laurent*, 583 A.2d 211, 212 (Me. 1990) (affirming property settlement that did not distribute sum of cash where there was absence of evidence of what became of cash); *Watson v. Watson*, 748 S.W.2d 890, 891-92 (Mo. Ct. App. 1988) (reversing property award of profit from sale of cattle where there was no evidence demonstrating that "gain remained in some form of tangible property available for division"). Although the court found wife's explanation for the use of the mortgage proceeds "unsatisfactory," there is no evidence to rebut the testimony of wife that the proceeds no longer exist.

Under 15 V.S.A. § 751(b)(11) the court may consider the contribution of a spouse to the depreciation in value of property. Thus the court in the present case could take into account wife's use of a revoked power of attorney to refinance the marital home in making its property disposition. Yet the court's "power does not extend beyond the existent estate. In other words the . . . [c]ourt may never award more than 100 percent of the marital estate." *In re Marriage of*

*Lippert*, 627 P.2d 1206, 1209 (Mont. 1981). We hold that the trial court does not have authority to award a money judgment as part of a property settlement where the evidence fails to demonstrate that the amount awarded exists.

Wife also argues that the trial court, in making its maintenance award, improperly considered fault and the desire of husband's children that he save a portion of his income. Modification of a property settlement necessitates a re-examination of the maintenance award. *Osborn v. Osborn*, 147 Vt. 432, 435, 519 A.2d 1161, 1163 (1986). Because we vacate and remand the property settlement in this case, we are required to vacate and remand the maintenance award. *Id.* Thus wife's arguments regarding maintenance need not be addressed. In light of our remand of the property disposition, we likewise need not address husband's cross-appeal that the trial court erred in failing to award husband any interest in the marital residence.

*The maintenance and property settlement awards are vacated, and the matter is remanded for further proceedings consistent with this opinion; otherwise affirmed.*