## Sally Gazo v. John Gazo

[697 A.2d 342]

No. 95-339

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 23, 1997

*Marsha Smith Meekins* of *Roesler, Whittlesey, Meekins & Amidon,* Burlington, for Plaintiff-Appellant.

*John R. Durrance, Jr.* of *Gaston, Durrance & Fairbanks,* Montpelier, for Defendant-Appellee.

**Dooley, J.** This action for child custody and support requires us to grapple again with the difficult issue of a proposed relocation in the midst of a divorce. We hold that the family court exceeded its authority in defining a relocation as a change of circumstances for the purpose of retaining jurisdiction under 15 V.S.A. § 668, and that other provisions of its order dealing with parental decision-making and visitation are overbroad or unnecessary or both. We affirm the trial court's property settlement and child support order.

Plaintiff Sally Gazo and defendant John Gazo were married in 1983. During their marriage, the parties had two children, both girls, one born in 1984 and the other in 1985. Prior to the parties' separation in March 1990, the parties were equally involved in all aspects of the daily care of their children. Both parties are experienced teachers in the same school system, both have master's degrees, and both earned identical salaries of $49,661.82 at the time of their divorce. The parties commingled assets and made equal contributions to their mortgage debt and car loans, and to the child support payments that defendant was obligated to pay on behalf of his children by a prior marriage.

Plaintiff first filed for divorce in February 1990, and in a March order, was awarded temporary legal and physical rights and responsibilities for the parties' two children, then aged five and four.

Defendant was ordered to pay child support and maintenance, and was granted parent-child contact at all reasonable times with advance notice. Plaintiff was awarded temporary exclusive possession of the parties' home in Waterbury Center, and was responsible for all expenses associated with the home.

Plaintiff discontinued the first divorce action and eventually filed two others that were interspersed with attempts at reconciliation. Plaintiff filed her third and final divorce action in December 1993. On March 21, 1994, the parties stipulated to a temporary order, pursuant to which plaintiff had legal and physical rights and responsibilities for the children and defendant had parent-child contact on alternating weekends and holidays, and for several weeks during the summer. In an order dated March 29, 1994, the magistrate set defendant's child support obligation at an amount below that specified in the guidelines. In June 1994, the parties listed their marital residence in Waterbury Center for sale.

In July 1994, plaintiff travelled to Michigan, where her parents live, and interviewed for a teaching job. She was offered a position on August 15, 1994 and informed defendant of her intention to accept the offer two days later. In response, defendant immediately sought temporary legal and physical rights and responsibilities for the parties' children and an expedited hearing to be held before plaintiff moved to Michigan. The next day, plaintiff moved to amend the schedule of parent-child contact, and sought permission to remove the children from Vermont so they could accompany her to Michigan. The court held an expedited hearing on August 31, and at the conclusion of the hearing granted defendant's motion to prevent the removal of the children from Vermont. Because plaintiff testified that she would stay in Vermont if she were not able to take the children to Michigan, the court denied defendant's motion to modify the preexisting custody order. The court's action left the location issue in status quo.

The family court held further hearings and, at the conclusion of the December 13 hearing, orally announced its findings of fact and conclusions of law with respect to parental rights and responsibilities. In the resulting order issued in May 1995, the court awarded legal and physical rights and responsibilities of the parties' children to plaintiff, with extensive visitation granted to defendant according to a schedule that contemplated that the parties would be living close to one another. The order provided that any move by plaintiff from the Waterbury area "shall confer jurisdiction on this Court to review parental rights and responsibilities for the children and to determine

what their best interests will be in the event of the Plaintiff making such a move." The order also provided that (1) plaintiff could not make any "major decisions" pursuant to the award of parental rights and responsibilities to her without first conferring with defendant, in good faith, in an attempt to reach a mutual decision and (2) plaintiff could not impose any limitations on whom the children see or what the children do when they are with defendant, and could not exercise any control over defendant's parent-child contact.

On March 24, 1995, the court issued written findings of fact and conclusions of law with respect to marital assets and child support. The court determined that the marital residence was worth $155,000, the outstanding mortgage on the house was $18,728, and the net equity was $136,272. Taking into account each party's initial contribution towards the purchase of the house, the court determined that plaintiff's interest in the net equity was $62,636 and defendant's interest was $73,636.

In the May order, the court required plaintiff to refinance the marital home so that she could pay defendant $37,636, or approximately half of his equity interest, immediately. The court permitted plaintiff to defer paying defendant the remaining $36,000 of his equity interest in the home until either the house was sold or the children completed high school, whichever came first. During the deferment period, the court ordered plaintiff to pay monthly interest to defendant at an annual rate of 7.5%, or $225 each month. The court also awarded defendant a right of first refusal should plaintiff choose to sell the marital residence, and a tax deduction for one of the parties' minor children. Finally, the court granted defendant a downward deviation from the child support guidelines for the period March 28, 1994 to March 24, 1995.

Following the final order, plaintiff sought to reopen the evidence on the value of the house to offer an appraisal showing the value as $110,000. The family court denied the motion.

In this Court, plaintiff challenges the restrictions on her physical and legal rights and responsibilities, the distribution of the parties' marital residence, the award to defendant of a right of first refusal on the sale of the house, the award of a tax deduction for one minor child, and the grant of a temporary deviation from the child support guidelines.

## I.

## A.

We begin by addressing plaintiff's challenges to the restrictions placed on her legal and physical rights and responsibilities over the parties' children. Plaintiff's primary challenge is to the provision that confers jurisdiction on the family court to review the parental rights and responsibilities order should she move from the Waterbury area.

A moving party must cross two hurdles in order to modify a custody determination. First, the moving party must make "a showing of real, substantial and unanticipated change of circumstances." 15 V.S.A. § 668. Once that threshold is met, the moving party must then show that annulling, varying or modifying a prior parental rights and responsibilities determination is in the best interests of the child. *Id.*; see *deBeaumont v. Goodrich*, 162 Vt. 91, 95, 644 A.2d 843, 845-46 (1994).

We have not decided whether as a general matter a divorce order can define a "change of circumstances" for the purpose of assuming jurisdiction in a future modification proceeding. *deBeaumont*, 162 Vt. at 96, 644 A.2d at 846. In *deBeaumont*, we did enforce a provision that specified that if either party moved more than fifty miles from their preexisting home, it would be considered a change of circumstances. We did so for two reasons: (1) the order set a reasonable benchmark to determine changed circumstances, consistent with our case law, and (2) the order was based on a stipulation of the parties that established their expectations about their living arrangements and the effect of a change of these arrangements on a co-parenting situation. *Id.*

■ Neither of the *deBeaumont* circumstances is present here. In this case, the court attempted to confer jurisdiction upon itself in the event plaintiff relocates outside of the Waterbury area. The provision does not set a reasonable benchmark to determine changed circumstances, since *any* move out of the Waterbury area, of *any* distance, would be considered a substantial change. Thus, it is not consistent with our ruling that "relocation without more is not per se a substantial change of circumstances." *Id.* at 97, 644 A.2d at 847; see also *Dunning v. Meaney*, 161 Vt. 287, 290, 640 A.2d 3, 5 (1993) (relocation alone "does not amount to a real, substantial or unanticipated change in circumstances justifying modification of the physical rights and responsibilities"). Nor is the relocation provision based on an agreement between the parties. We do not believe the court can

define a substantial change of circumstances with a preexisting court order that does not meet either of the criteria set forth in *deBeaumont*.

At the same time, we recognize that the court was placed in the difficult position of dealing with plaintiff's desire to relocate to Michigan. Consistent with our precedents, see *deBeaumont*, 162 Vt. at 97, 644 A.2d at 847 (where father had parent-child contact for three days each week, mother's relocation to Pennsylvania with children was change of circumstances); *Lane v. Schenck*, 158 Vt. 489, 496, 614 A.2d 786, 790 (1992) (relocation, like move to Iowa before court, "often triggers jurisdiction under the modification statute"), the court believed that a move to Michigan would be a change of circumstances from the situation before it. The court's difficulty was heightened by the threshold requirement that a parent cannot seek modification of a custody determination unless the changed circumstances are "unanticipated." See 15 V.S.A. § 668; *Dunning*, 161 Vt. at 290, 640 A.2d at 5 (custodial parent's move to Albany, N.Y. from central Vermont not unanticipated when it was contemplated at time of divorce that custodial parent might move to pursue career opportunities and divorce order provided for reevaluation of visitation if custodial parent moved).

█  In general, we encourage courts to award parental rights and responsibilities in light of a parent's proposed relocation. As we have stated before, "The place of residence for a family is central to childrearing," *Lane*, 158 Vt. at 495, 614 A.2d at 789, and it is not appropriate for the court to direct where the custodial parent and children shall reside. See *id.* at 497, 614 A.2d at 790. Cognizant of the parent's proposed relocation, the court can fashion alternate visitation schedules depending on where the custodial parent chooses to live. A future move consistent with the proposed relocation would not be an unanticipated change of circumstances and would therefore not justify a modification of the custody order.

█  This case is unusual, however, in that both plaintiff and defendant were almost equally situated in terms of the factors set forth in 15 V.S.A. § 665 for awarding parental rights and responsibilities. As a result, the parties' proposed residences became a dominant factor in the court's decision. The court did not, however, want to determine custody based on the occurrence of a move by plaintiff that might never happen. Under these conditions, we believe it appropriate to give plaintiff the choice of specifying the facts upon

which the court should base its custody decision. Plaintiff has the option of telling the court either that (1) she will move, so that any later relocation by plaintiff consistent with the proposed relocation will not be unanticipated, or (2) she has made no firm decision to move, so that any later relocation by plaintiff will be unanticipated. Thus, if plaintiff tells the court she *will* move, then the court shall determine parental rights and responsibilities by comparing the children's proposed life with plaintiff in Michigan with the children's proposed life with defendant in Vermont pursuant to the factors in 15 V.S.A. § 665. Otherwise, the court shall compare the current living arrangements of the parties. If plaintiff is awarded custody and subsequently relocates with the children, then the burden will shift to defendant to demonstrate a real, substantial and unanticipated change of circumstances, and why modification of the order and relocation back to Vermont is in the best interests of the children. See *id.* § 668.

## B.

Plaintiff next argues that the family court exceeded its jurisdiction when it ordered her to confer, in good faith, with defendant to reach a mutual agreement before making any major decisions regarding the exercise of her parental legal rights and responsibilities. In the event that the parties do not agree, the order gives plaintiff the final authority to make all decisions. Plaintiff's position is that she was awarded legal rights and responsibilities for the children, and this restriction undercuts the award.

Under plaintiff's position, the court can award parental rights and responsibilities to one parent, or it can award joint custody where all parental rights and responsibilities are shared, but nothing in-between. We do not believe that the statutory scheme creates such rigid and inflexible categories. The controlling statute provides that the "court may order parental rights and responsibilities to be divided or shared between the parents on such terms and conditions as serve the best interests of the child." 15 V.S.A. § 665(a); see also *id.* § 664(1)(A) ("Legal responsibility may be held solely or may be divided or shared."). It goes on to say that when the parties cannot agree on how to share parental rights and responsibilities, the court "shall award parental rights and responsibilities primarily or solely to one parent." *Id.* § 665(a). We have interpreted this section to mean that the court cannot award joint custody without the consent of both parties. See *Bancroft v. Bancroft*, 154 Vt. 442, 448, 578 A.2d 114, 118

(1990) (§ 665(a) reflects legislative judgment that "court-imposed joint custody, without the mutual agreement of the parties, is not in a child's best interest"). This does not mean that the only alternative is an award of all rights and responsibilities solely to one parent. The use of the word "primarily" shows that the Legislature expected that some sharing of responsibilities, short of joint custody, could be ordered.

This reading of the Legislature's intent is supported by other statutory sections. Section 670 specifically provides that a parent who has not been awarded parental rights and responsibilities still has a right of access to "medical, dental, law enforcement and school records." 15 V.S.A. § 670. The Legislature also authorized the court to order that a parent who has "responsibility for a certain matter involving a child's welfare . . . inform the other parent when a major change in that matter occurs." *Id.* § 665(d). In determining its award of parental rights and responsibilities, the court must consider "the ability and disposition of the parents to communicate, cooperate with each other and make joint decisions concerning the children where parental rights and responsibilities are to be shared or divided." *Id.* § 665(b)(8). This approach is also supported by the legislative finding that a minor child should continue "to have the opportunity for maximum continuing physical and emotional contact with both parents." *Id.* § 650.

■ Although the court must ensure that one parent is the child's primary parent, the court does retain some flexibility to fashion an award that keeps both parents involved in decision-making. Such an award may be appropriate where it appears that such involvement is in the best interest of the children and will reduce conflict over parental decisions. See generally H. Robinson, *Joint Custody: An Idea Whose Time Has Come*, 21 J. Fam. L. 641, 645-52 (1983) (describing detrimental effects of excluding one parent from decision-making process). Thus, where the circumstances warrant it, the family court may require the primary parent to consult with the other parent before making certain decisions.

■ We are concerned, however, about the scope of the order under review. An order may not be overly broad, and must be sufficiently specific to be enforceable. See *Klein v. Klein*, 150 Vt. 466, 478, 555 A.2d 382, 389 (1988); *Roya v. Roya*, 145 Vt. 488, 491, 494 A.2d 132, 134 (1985). The requirement that plaintiff confer with defendant refers to "major decisions." We find the terminology broad and vague

to the point that the order is not enforceable. If the court is to make such an order, it must specify the decisions involved and craft some ascertainable standard to determine when a decision is so important as to invoke the consultation requirement. We strike the provision requiring plaintiff to confer with defendant before making any major decisions regarding the exercise of her parental legal rights and responsibilities, and remand for consideration of a more specific provision.

## C.

Plaintiff also contests those portions of the order that prohibit plaintiff from imposing "any limitations on who the children see or what the children do when they are having parent-child contact with the Defendant" and from "exercis[ing] any control over the Defendant's parent-child contact." The court based this provision upon findings that both plaintiff and defendant would be suitable parents, and that it was in the children's "best interest to have maximum contact with both parents." The court also determined that, although defendant made responsible decisions concerning the children, plaintiff tended "to seek to exert an unduly large amount of control over what the girls do while they are in defendant's care." Specifically, the court found:

> [Plaintiff] has made restrictions about who [the children] can see when they are with [defendant], and has made decisions about whether or not they can spend time with their father based upon her own assessment of whether or not she wants them to be with other individuals. . . . [T]his is not founded under these circumstances where there is no information that any of the people that defendant spends time with when he's with the children is likely to have any detrimental effect on the children. . . . [P]laintiff has been very sparing of permitting the defendant to spend any more than the minimal amount of time required by court orders with the children.

The parent without physical responsibility for the children has a right to some measure of parent-child contact unless the best interests of the children require otherwise. See *Cleverly v. Cleverly*, 147 Vt. 154, 157, 513 A.2d 612, 614 (1986). Where the best interests of the children clearly require it, the court may impose conditions on visitation, see *Palmer v. Palmer*, 138 Vt. 412, 415, 416 A.2d 143, 145

(1980), but this is not to suggest that the custodial parent may impose restrictions unilaterally. See *Cleverly*, 147 Vt. at 158, 513 A.2d at 614 (visitation may not be left to "convenience and discretion of the custodial parent"). If the custodial parent desires that restrictions be imposed, she must ask the court to impose them.

We have observed that "[w]ithout mutual tolerance and understanding, these rights of visitation can become a nightmare for both parents and a disaster for the child or children involved." *Boone v. Boone*, 133 Vt. 170, 174, 333 A.2d 98, 101 (1975). The evidence here supported the family court's finding that defendant showed that tolerance and understanding, but plaintiff did not.

■ Although we find the court's findings to be supported by the evidence, we cannot affirm its conclusions and order. We find that the order is overly broad to the extent that it interferes with the award of parental rights and responsibilities to plaintiff. Plaintiff was awarded the right to control at least the "education, medical and dental care, religion and travel arrangements" of the children, 15 V.S.A. § 664(1)(A), subject to the order's specific provisions on travel arrangements and plaintiff's obligation to consult with defendant. Although defendant is entrusted the routine daily care and control of the children during visitation, the visitation right cannot be used to nullify the parental rights and responsibilities awarded to plaintiff. Cf. *Jakab v. Jakab*, 163 Vt. 575, 583-84, 664 A.2d 261, 266 (1995); *Lane*, 158 Vt. at 499, 614 A.2d at 791. Plaintiff's rights are limited by the order's provision that she cannot impose any limits on "what the children do when they are having parent-child contact with the Defendant."

Ordinarily, we would remand a provision that is overly broad so that the court below would have the opportunity to fashion a narrower provision if appropriate. In this instance, however, we believe the provision prohibiting plaintiff from placing restrictions on defendant's parent-child contact is also unnecessary. The court justified its order based on plaintiff's lack of flexibility in allowing discretionary visitation. The 1990 temporary order, which was the only order issued until 1994, provided for visitation at all reasonable times and places upon agreement of the parties and with advance notice. The final order on parent-child contact, in comparison, set out a detailed annual schedule of visitation leaving nothing to plaintiff's discretion. Although the court found plaintiff was not forthcoming and flexible about defendant's parent-child contact, it never found that she violated his

visitation rights, once they became specific by stipulation in March 1994, or found that there was a threat that she would violate the permanent order. Cf. *Price v. Price*, 149 Vt. 118, 124, 541 A.2d 79, 83 (1987) (court cannot base custody decision on frustration of visitation where custodial parent did not violate any visitation order). Nor did the court find any reasons for restricting defendant's parent-child contact. Thus, if plaintiff wants to impose restrictions on defendant's actions during visitation, she will have to seek further court intervention for that purpose. In these circumstances, the provision prohibiting plaintiff from placing limits or exercising control over defendant's parent-child contact is unnecessary, and no remand is called for.

## II.

We next consider plaintiff's attacks on the manner in which the court valued and distributed the marital residence. Plaintiff first argues that the court should have reopened the evidence after trial to permit plaintiff to submit an appraisal of the home. Without an appraisal, she contends, the court could not order a specific dollar-amount division of the parties' interest in the marital residence and could not order her to refinance the home to pay defendant's share. She also argues that the court could not rely on the valuations presented by the parties because they were stale.

■ ■  We will not disturb a trial court's findings in making a property distribution unless they are clearly erroneous. See *Schwartz v. Seldin-Schwartz*, 165 Vt. 499, 501, 685 A.2d 665, 666 (1996). The court's ability to value property is limited by the evidence put on by the parties and the credibility of that evidence. *Kanaan v. Kanaan*, 163 Vt. 402, 407, 659 A.2d 128, 132 (1995); see also *Ellis v. Ellis*, 150 Vt. 650, 650, 552 A.2d 406, 407 (1988) (mem.) (division of property will not be disturbed where defendant failed to present evidence). Here, both parties testified as to the value of the house: plaintiff opined that the value was $140,000, defendant valued it at $155,000. See 12 V.S.A. § 1604 (owner of property is competent witness to testify to its value). Both parties acknowledged the existence of a nonbinding written offer to purchase the marital residence for $155,000 that was submitted in August 1994. Even if the evidence of the offer was stale, as claimed by plaintiff, the testimony of defendant as to his opinion of the value of the property on the date of the final hearing was sufficient to support the court's finding. See *Albarelli v. Albarelli*, 152 Vt. 46, 48, 564 A.2d 598, 599 (1989).

█ Plaintiff failed to offer any additional evidence of the value of the residence, despite the fact that it was the primary asset of the marriage. Following the court's issuance of findings, plaintiff sought to put in additional evidence of value through an appraisal. The court has the discretion to allow additional evidence for good cause. See 15 V.S.A. § 554(b). Where, as here, there was no reason given why the evidence could not have been presented at trial, the court did not abuse its discretion in refusing to reopen. See *Goslant v. Goslant*, 130 Vt. 210, 212, 290 A.2d 22, 23 (1972).

Plaintiff next argues that the court, in making the property award, failed to consider the factors enumerated in 15 V.S.A. § 751(b) and neglected to state the reasons for its division. See *Dreves v. Dreves*, 160 Vt. 330, 335, 628 A.2d 558, 561 (1993) (reversing for court's failure to explain large disparity in property award). Plaintiff's argument is without merit. In its March 1995 order, the court carefully considered each of the statutory factors in § 751(b) and explained the reasons for the distribution. We find that the property distribution was within its discretion and was supported by its findings.

Finally, plaintiff challenges the award to defendant of a right of first refusal on the marital residence. At the request of defendant, the court ordered that plaintiff execute an instrument providing that if plaintiff seeks to sell the house, defendant would have an option to purchase it first. In its conclusions, the court indicated that the right of first refusal gives defendant the option of purchasing the home to "maintain it as a home for the girls." Plaintiff argues that this purpose relates to the award of parental rights and responsibilities, and is not authorized by the statute governing property distribution, 15 V.S.A. § 751(b).

█ We reiterate that the family court has broad discretion in the distribution of property. See *Guiel v. Guiel*, 165 Vt. 584, 584-85, 682 A.2d 957, 958 (1996). We have authorized the use of option-to-purchase arrangements in other contexts. See *Sullivan v. Sullivan*, 137 Vt. 544, 546, 409 A.2d 561, 562 (1979); *Hutchins v. Hutchins*, 135 Vt. 350, 352, 376 A.2d 744, 746 (1977). Nothing in § 751(b) suggests that the court cannot consider its award of parental rights and responsibilities, or parent-child contact, in fashioning a property award. See *Buxton v. Buxton*, 148 Vt. 22, 24, 527 A.2d 660, 662 (1987) (best interests of children is valid factor to consider in final order concerning award of family home); *Palmer v. Palmer*, 138 Vt. at 416, 416 A.2d at 146 (court may order homestead preserved for use of minor children). Although defendant does not presently have custody of the children, he does

have extensive visitation. It was not unreasonable for the court to allow defendant to purchase the home to maintain a familiar environment for the children. There was no abuse of discretion.

## III.

Plaintiff's next claim of error concerns the award to defendant of a tax exemption for one of the parties' minor children. The Tax Reform Act of 1984 amended the Internal Revenue Code to create a presumption that the parent with custody of a child is entitled to the dependency exemption for that child. Pub. L. No. 98-369, 98 Stat. 494 (codified as amended at 26 U.S.C. § 152(e)(1) (1988)). The rule does not apply, however, if the custodial parent releases a claim to the exemption. 26 U.S.C. § 152(e)(2). The statute is silent as to whether state courts may allocate exemptions to noncustodial parents, but the majority rule is that state courts retain such authority. See, e.g., *Monterey County v. Cornejo*, 812 P.2d 586, 589 (Cal. 1991) (citing cases); *Hughes v. Hughes*, 518 N.E.2d 1213, 1214 (Ohio), *cert. denied*, 488 U.S. 846 (1988); accord *Thibault v. Commissioner*, 68 T.C.M. (CCH) 881, 882-83 (1994) (noncustodial parent was properly denied dependency exemption where divorce decree awarded exemption to custodial parent); see generally G. Phillips, *State Court's Authority, in Marital or Child Custody Proceeding, to Allocate Federal Income Tax Dependency Exemption for Child to Noncustodial Parent Under § 152(e) of the Internal Revenue Code*, 77 A.L.R.4th 786 (1990 & Supp. 1996) (listing jurisdictions). We find nothing in our child support statute that prevents the family court from allocating income tax dependency exemptions. In the instant case, the court found that both parties contribute about equally to the support of the parties' children. Accordingly, the court awarded one dependency exemption to each of the parties. We adopt the majority rule that a court may allocate dependency exemptions and, based on the court's reasoning, affirm the award of a dependency exemption for one of the parties' children to defendant.

## IV.

Plaintiff next challenges the court's grant of a temporary deviation from the child support guidelines for the period March 28, 1994 to March 24, 1995. Defendant was ordered to pay support in accordance with the guidelines at all other times.

The Vermont child support guidelines are established by rule of the Secretary of Human Services. 15 V.S.A. § 654. Using these guide-

lines, the family court derives a total child support obligation based upon the parents' combined available income, and then determines each parent's child support obligation in proportion to that parent's available income. *Id.* § 656(a). If the court finds that a child support order calculated from the guidelines is "unfair" to the child or any of the parties, based on an evaluation of the statutory factors and any other factors it finds relevant, the court may adjust the amount of child support. *Id.* § 659(a). One factor the court must consider in determining whether to deviate from the guidelines is the "financial resources and needs of the noncustodial parent." *Id.* § 659(a)(6).

We have warned against deviating from the guidelines based upon slight variations in the needs of children or their parents. *Ainsworth v. Ainsworth*, 154 Vt. 103, 109, 574 A.2d 772, 776 (1990). In particular, we noted that "the actual expenditures of the parents are not relevant to the guideline calculation." *Id.* at 107, 574 A.2d at 775. When the court deviates from the guidelines, the court's "findings and conclusions must show it considered the factors specified in § 659(a) as well as other relevant factors and must show the reasons for the deviation from the guidelines and the amount of support ordered." *Id.* at 114, 574 A.2d at 779 (reversing deviation from guidelines because findings and conclusions were incomplete).

In this case, the guideline calculation required defendant to pay plaintiff $833.15 per month, and the court ordered him to pay that amount in the future. Pursuant to a stipulated temporary agreement signed a year earlier, defendant had been paying only $759.18 per month. Under the court's order, defendant was not required to make up the difference of $74 per month for the one-year period.

■■■ The court's analysis showed a consideration of all the relevant factors. The court found that, during the parties' extended period of separation, defendant had no access to his interest in the property and did not receive the tax benefits of his ownership of the property or his support of the children. The amount of the deviation was relatively small, and the parties had stipulated to the temporary payment level. In these circumstances, we conclude that the deviation from the guidelines fell within the court's discretion.

## V.

Defendant has requested that we award him attorneys' fees on appeal and require plaintiff to fulfill all financial obligations within

sixty days of this decision, with interest.* Defendant's claims for attorneys' fees must be made by motion in the trial court within fourteen days after issuance of the mandate by this Court. V.R.A.P. 39(f). Because of this appeal, the timing of plaintiff's payments to defendant, as contained in the final divorce order, are no longer operable. On remand, the court should set new times for these payments. The issue of interest is also properly addressed to the family court. See V.R.A.P. 37 (interest on judgments).

*The following sections of the final order of divorce are stricken: (1) the third sentence of section 4; (2) section 6; and (3) section 10. The custody and visitation awards are vacated and remanded for proceedings not inconsistent with this opinion. The remaining provisions of the order are affirmed.*

**Morse, J.,** concurring and dissenting. I concur in the Court's resolution of the relocation issue. Nevertheless, I continue to believe, as I have elsewhere stated, *deBeaumont v. Goodrich,* 162 Vt. 91, 104-06, 644 A.2d 843, 851-52 (1994) (Morse, J., concurring), that we have made the modification-of-custody proceeding needlessly complex and artificial through the two-step approach described in the recent case law and reaffirmed in today's decision.

## I.

The governing statute provides that a court may modify a custody award "upon a showing of real, substantial and unanticipated change of circumstances . . . if it is in the best interests of the child." 15 V.S.A. § 668. The plain language of the statute permitting modification does not, in my view, clearly and unambiguously mandate a two-stage judicial inquiry, first into whether there has been a substantial and unanticipated change of circumstances, and only then, if such change is found, into the question of the best interests of the child. The two questions are not rigidly separated in the text. On the contrary, the statutory language is fluid, authorizing a modification when circumstances have substantially changed "if it is in the [child's] best interests." *Id.* This suggests a blended or merged analysis, assessing the substantiality of the change in light of its effect on the welfare of the child.

I acknowledge this Court has held expressly to the contrary, most notably in *Kilduff v. Willey,* 150 Vt. 552, 554 A.2d 677 (1988). There,

---

*Defendant also moved to file a reply brief to plaintiff's reply brief. We grant the motion and deny plaintiff's motion to strike that brief.

we stated in the starkest of terms that a finding of changed circumstances was a jurisdictional "threshold" to the court's consideration of the child's best interests. *Id.* at 553, 554 A.2d at 678. Some of the earlier cases on which *Kilduff* relied, however, stand for precisely the opposite conclusion. Most notably, in *Gerety v. Gerety*, 131 Vt. 396, 306 A.2d 693 (1973), we observed:

> It is the settled law of this Court that to warrant the modification of a custody order, the petitioner must show a substantial change in the material circumstances since the date of the decree. Thus the petitioner must prove a substantial change in the material circumstances *and* that under the new conditions a change of custody is in the best interests of the child or children. It is equally well settled that it is the *welfare of the child which in the last analysis is determinative in a custody matter.*

*Id.* at 399, 306 A.2d at 694 (citations omitted) (emphasis added).

The underscored language in *Gerety* strongly supports an approach in which the two issues are combined, and the substantiality of the change is evaluated in light of its effect on the child. That this was the understanding in *Gerety* is confirmed later in the opinion, where we stated:

> There can be no fixed standards to determine what constitutes a substantial change in material circumstances. The court is guided by a rule of very general application that the *welfare and best interests of the children are the primary concern in determining whether the order should be changed.*

*Id.* at 402, 306 A.2d at 695 (emphasis added); see also *Miles v. Farnsworth*, 121 Vt. 491, 493, 160 A.2d 759, 760 (1960) (welfare of child is critical determinant in evaluating motion for modification of custody); *McKinney v. Kelley*, 120 Vt. 299, 309, 141 A.2d 660, 667 (1957) (in evaluating modification-of-custody motion, "the real question . . . was [whether] the change [was] detrimental as far as [the child's] welfare is concerned"), *cert. denied*, 356 U.S. 972, *reh'g denied*, 357 U.S. 944 (1958).

Thus, the modification statute does not, in my view, contemplate a mechanistic two-step approach to change-of-custody issues, but rather a flexible test in which the change of circumstances and the welfare of the child are evaluated together in a single, unified inquiry.

Indeed, *Kilduff* notwithstanding, I believe that courts deciding such issues routinely adopt this approach, albeit not explicitly. "After all, it is impossible to evaluate 'real, substantial and unanticipated change of circumstances' without considering how the events and circumstances impact on the child's best interests." *deBeaumont*, 162 Vt. at 105, 644 A.2d at 851 (Morse, J., concurring). It is time we reinterpret the statute to reflect reality.

## II.

I disagree with the Court's conclusion that the order requiring plaintiff to consult with defendant about "major decisions" affecting the children was impermissibly vague. While a more detailed order tailored to the specific circumstances of the case might in some cases be useful, the absence of such detail is not fatal. No mystery surrounds the meaning of "major decisions" in this context. The statute explicitly defines the six fundamental areas that a child-custody agreement must address. These are: (1) physical living arrangements; (2) parent-child contact; (3) education of the minor children; (4) medical, dental and health care; (5) travel arrangements; and (6) procedures for communicating about the children's welfare. 15 V.S.A. § 666(b); see also 15 V.S.A. § 664(1) (defining scope of "parental rights and responsibilities"). The order in this case may reasonably be informed by these mandatory statutory areas to determine what is meant by the "major decisions" about which the parties must confer.

Accordingly, I dissent from that portion of the Court's decision striking the consultation order and remanding for consideration of a more specific provision.