NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 24

No. 24-AP-049

| | |
|---|---|
| Sean Gordon | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Grand Isle Unit, |
| | Family Division |
| | |
| Katy Fogell | January Term, 2025 |

Samuel Hoar, Jr., J.

Cynthia L. Broadfoot and Deborah M. Ryan, of Broadfoot, Attorneys at Law, Burlington, for
  Plaintiff-Appellee/Cross-Appellant.

Jacob Oblak of Henchen & Oblak, LLP, Waterbury, for Defendant-Appellant/Cross-Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **COHEN, J.** Both parents appeal from the family division's award of parental rights and responsibilities in the final divorce order. Mother argues that the court abused its discretion in awarding primary legal rights and responsibilities for the parents' two children to father. Mother argues that the court erred in concluding that mother's proposed relocation to Michigan weighed in favor of an award to father. In his cross-appeal, father argues the family division abused its discretion in granting mother legal rights and responsibilities to make medical and dental decisions for the children. He also challenges the court's determination that he was less willing and able to foster a positive relationship between the children and mother. We affirm the

latter determination but reverse and remand the court's award of parental rights and responsibilities for further proceedings consistent with this order.

¶ 2.     The court made the following findings. Mother and father began a relationship in 2011 and, in 2014, moved to Grand Isle, Vermont. They married in June 2016 and have two children born in 2016 and 2018. In early 2016, father was diagnosed with multiple sclerosis. By 2018, the disease progressed to the point where father could no longer work. Father has received disability assistance from 2018 to the present. During this time, mother also experienced serious health issues including a very difficult delivery of their second child and thyroid cancer. Mother has not worked since 2018 but does not receive disability assistance.

¶ 3.     Father did not provide emotional or financial support for mother during her illness. In 2020, mother expressed a desire to go with the children to Michigan to receive support from her family. Father eventually agreed to let them go, but then delayed the process and threatened to take the children away from mother if she left. Father had control over the couple's finances, so mother obtained a loan from her brother and traveled to Michigan. Mother told father where they were upon arriving in Michigan, and father flew to Michigan soon after. Shortly after father's arrival in Michigan, the parents' eldest child was diagnosed with Type 1 diabetes. At the same time, mother had thyroid surgery. The family remained in Michigan for some time while mother recovered. The parents then traveled back and forth between Michigan and Vermont for several months, attempting to make their relationship work. The parents separated in April 2021 when mother obtained a temporary order for relief from abuse against father. Since then, mother and father have lived in Vermont with mother occupying the home in Grand Isle and father living with his parents. Father filed for divorce in April 2022.

¶ 4.     Since the separation, the children have resided with each parent for alternating weeks pursuant to a temporary custody order. The court found that this arrangement worked well

2

for the children. Parents have coordinated to manage the eldest child's diabetic care and father's parents have provided support for the children financially and logistically. The children are currently enrolled in school in Grand Isle. The court found that the children are well connected and supported in Grand Isle schools and both parents agreed it would be "an adjustment" to relocate the children.

¶ 5. Each parent sought full custody of the children. Mother wished to return to Michigan with the children to receive financial, emotional, and physical support from her family while she managed her health issues and found employment. Father wanted the children to remain in Vermont. Mother testified that she would remain in Vermont if father was awarded full custody.

¶ 6. The court found that most of the factors set forth in 15 V.S.A. § 665(b) weighed evenly. Each parent loved the children and was capable of meeting their physical and emotional needs. Father's controlling behavior, as well as his denigration of mother's contributions to the family, indicated that he was "less willing and able" to promote a healthy relationship between the children and mother. However, the significant role played by father's parents in the children's lives, as well as the unknown impact of mother's proposed move to Michigan, tipped the scales back in father's favor. Mother lacked a firm plan for moving to Michigan and that there was insufficient evidence to show that she could provide a home there that met the children's needs. Moving to Michigan would also reduce father's role in the children's lives. Based on these findings, the court concluded that awarding legal rights and responsibilities to father would continue the status quo, which would serve the children's best interests. The court did not award physical rights and responsibilities. "To facilitate and encourage [mother's] continued involvement," the court awarded mother the right to make medical and dental decisions for the children. Both parents appealed.

¶ 7. When parents cannot agree to the division of parental rights and responsibilities of their minor children, "the court shall award parental rights and responsibilities primarily or solely to one parent." 15 V.S.A. § 665(a). Parental rights and responsibilities are divided into legal and physical responsibilities, each of which the court must assign. Id. § 664. The court must consider the best interests of the children when making such an order and must consider the statutory factors listed in 15 V.S.A. § 665(b). "In determining the best interests of the children in custody matters, the court may draw upon its own common sense and experience in reaching a reasoned judgment." Payrits v. Payrits, 171 Vt. 50, 53, 757 A.2d 469, 472 (2000). The best interests of the children must be the primary focus rather than the interests and desires of the parents. Price v. Price, 149 Vt. 118, 125, 541 A.2d 79, 83 (1987).

¶ 8. The family division has broad discretion in awarding parental rights and responsibilities, "which we will not disturb unless this discretion was exercised upon unfounded considerations or to an extent clearly unreasonable upon the facts presented." Terino v. Bleeks, 2018 VT 77, ¶ 12, 208 Vt. 65, 195 A.3d 647 (quotation omitted). We will uphold the court's factual findings unless they are clearly erroneous. Nickerson v. Nickerson, 158 Vt. 85, 88-89, 605 A.2d 1331, 1333 (1992). "[T]he court must state its reasoning for awarding parental rights and responsibilities in its order, and its reasoning may not be based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Lee v. Ogilbee, 2018 VT 96, ¶ 21, 208 Vt. 400, 198 A.3d 1277 (quotation omitted). Finally, the court must "point out what findings tipped the scale in favor of the award it made" because when it fails "to do so, the trial court leaves this Court to speculate as to the basis for its decision" which we decline to do. LeBlanc v. LeBlanc, 2014 VT 65, ¶ 31, 197 Vt. 17, 100 A.3d 345 (quotation omitted).

¶ 9. On appeal, mother argues that the court abused its discretion in awarding legal custody to father. Mother argues that the court erred by downplaying father's controlling behavior,

ignoring the fact that she was the children's primary care provider, and substituting the court's own judgment about where the children should live for mother's. Mother contends that the § 665(b) factors weighed in her favor. For his part, father argues that the court abused its discretion in dividing legal parental rights and responsibilities and assigning mother medical and dental responsibilities without finding that this arrangement was in the children's best interests. He also challenges the court's finding that he was less able than mother to foster a positive relationship between the children and the other parent.

¶ 10. We agree with both parents that the court's decision cannot stand for several reasons. First, the court made no findings regarding the primary-care-provider factor. See 15 V.S.A. § 665(b)(6) (stating that court shall consider "the quality of the child's relationship with the primary care provider"). We have held that the primary-care-provider factor "should be entitled to great weight unless the primary custodian is unfit." Nickerson, 158 Vt. at 89, 605 A.2d at 1333 (quotation omitted). The court must give "due consideration to the primary custodian in evaluating the child's best interests," but only if the primary care provider "has been correctly identified." Id.; see also Clark v. Bellavance, 2016 VT 124, ¶ 24, 204 Vt. 111, 162 A.3d 679 (reiterating primary-care-provider factor "should be entitled to great weight" and affirming trial court's finding of father as primary caretaker due to sufficient evidence).

¶ 11. The court in this case did not explicitly address the primary-care-provider factor in its discussion of the § 665(b) factors. Elsewhere in the decision, it found that mother and father have followed a temporary custody arrangement in which they alternate weeks with the children. It also stated that in or around 2018, "each contributed equally, as she or he could, to the operation of the household and the care of the children." However, the court did not state which parent, if any, was the primary care provider, or indicate whether it considered this factor at all. While a court can find that both or neither parents were primary care providers, Payrits, 171 Vt. at 54, 757

5

A.2d at 473, the court did not make such a finding here. Given that the record contains conflicting evidence as to who primarily cared for the children and when, we are left to speculate as to which, if any, parent is the primary care provider, and to speculate as to how the court weighed this important factor against the others. See Nickerson, 158 Vt. at 91, 605 A.2d at 1334 (declining to affirm trial court's primary-care-provider decision because Court was left to speculate as to reasons why family court ruled in favor of husband).

¶ 12. Second, the court made erroneous findings in its analysis of mother's proposed move to Michigan. It is appropriate for the court to consider a party's proposed relocation in fashioning a parental-rights-and-responsibilities order. Paine v. Buffa, 2014 VT 10, ¶ 12, 195 Vt. 596, 93 A.3d 90. When parents are "almost equally situated with respect to the statutory factors . . . the parties' proposed residences can become a dominant factor in the court's decision." Id. Under such circumstances, the parent that proposes relocation has the option of telling the court either that "(1) she will move, so that any later relocation by [her] consistent with the proposed relocation will not be unanticipated, or (2) she has made no firm decision to move, so that any later relocation by [her] will be unanticipated." Id. (quotation omitted) (alterations in original). If a party indicates that they will move, then the court must determine parental rights and responsibilities by comparing the children's proposed life in the new location with the proposed life with the nonrelocating parent. Gazo v. Gazo, 166 Vt. 434, 442, 697 A.2d 342, 346 (1997). However, the court cannot direct where the parents and children reside. Id. at 441, 697 A.2d at 346.

¶ 13. Here, the court determined that most of the § 665(b) factors weighed evenly for each party and that § 665(b)(4)—"the quality of the child[ren]'s adjustment to the child[ren]'s present housing, school, and community and the potential effect of any change"—was the deciding factor. 15 V.S.A. § 665(b)(4). The court's findings with regard to mother's proposed move were

only that mother "has made clear her desire to return to Michigan, where she may receive more emotional and financial support from her family as she continues to navigate her health issues and a hoped-for return to employment," but that she lacked a plan and there was no evidence about the effect of the proposed move on the children.

¶ 14. The findings that mother lacked a plan and that there was no evidence about the effect of the proposed move are clearly erroneous. Mother testified that she currently had an apartment above her mother's house in Michigan. If granted custody, she would go to Michigan during the weeks the children were with father and find a different apartment or house and enroll the children in school. She planned to reestablish relationships with the doctors the children had previously seen in Michigan. Mother had already lived with the children in Michigan for at least six months and had enrolled one of them in tutoring during that period, which suggests that she was capable of meeting the children's needs in that environment. Mother testified that her mother had a close and loving relationship with the children and that the children loved their Michigan cousins and extended family. Mother proposed a parent-child contact arrangement in which the children would stay with her during the school year and visit father during the summers. The court did not make any findings about this testimony. Instead, it erroneously found that there was no evidence about the children's proposed lives in Michigan. This factual error meant that it did not actually compare the Michigan scenario with father's proposal to remain in Vermont, as it was required to do under our case law, Gazo, 166 Vt. at 442, 697 A.2d at 346, and "indicat[es] that a misapplication of the law may have occurred." Nickerson, 158 Vt. at 89, 605 A.2d at 1333.

¶ 15. Further, we agree with father that the court's division of legal rights and responsibilities between him and mother is not supported by the findings. We have previously held that while it is not in a child's best interests to order parents to share parental rights and responsibilities without mutual assent, the court can allocate individual legal rights and

7

responsibilities between the parents if such an arrangement is in the child's best interests. Vance v. Locke, 2022 VT 23, ¶ 13, 216 Vt. 423, 279 A.3d 689. As with any other aspect of its decision, the court is required to make findings in support of its conclusion and those findings must be supported by evidence. LeBlanc, 2014 VT 65, ¶ 27.

¶ 16. Here, the court assigned medical and dental decisionmaking rights to mother but provided no reasoning for its award other than to "facilitate and encourage [mother's] continued involvement." We conclude that this statement was inadequate to support the court's decision. There was no indication that mother would cease to be involved in the children's lives if legal responsibilities were granted to one parent. Moreover, the court did not find that mother was better suited for medical responsibilities. The court's order indicated that both parents were capable of managing the children's medical care and it did not find that mother was previously the sole person who took on this vital role. This case therefore differs from those in which we have affirmed decisions to divide legal rights and responsibilities because those decisions were supported by findings that such a division would best serve the children's interests. See, e.g., Vance, 2022 VT 23, ¶ 14 (affirming decision to award father educational decisionmaking and mother other legal responsibilities where evidence showed father was more able to support son's educational needs); Shea v. Metcalf, 167 Vt. 494, 501-02, 712 A.2d 887, 891 (1998) (affirming trial court's decision to grant father medical and education responsibilities because of mother's refusal to immunize children and children's inability to read as result of mother's homeschooling). The court's decision to divide legal rights and responsibilities here is not supported by adequate findings.

¶ 17. Finally, the court did not explicitly assign physical rights and responsibilities in its order. While this issue was not raised on appeal or briefed by parents, we emphasize that the court must determine both legal and physical rights and responsibilities when fashioning a custody award. See 15 V.S.A. §§ 664(1), 665(a); Barrows v. Easton, 2020 VT 2, ¶ 10, 211 Vt. 354, 227

A.3d 1030. Physical rights and responsibilities are the "rights and responsibilities to provide routine daily care and control of the child subject to the right of the other parent to have contact with the child." 15 V.S.A. § 664(1)(B). Where, as here, the parents cannot agree to share rights and responsibilities, the court must award physical rights and responsibilities primarily or solely to one parent. Id. § 665(a). In a case where one party proposes to relocate, assignment of physical rights and responsibilities is critical because "the physical custodian has a right to determine the children's residence." Barrows, 2020 VT 2, ¶ 13. By failing to assign physical rights and responsibilities to one of the parents, the court abused its discretion.

¶ 18. The court erred by failing to consider the primary-care-provider factor, improperly analyzing the evidence surrounding mother's proposed relocation, dividing legal responsibilities without explaining its reasoning, and failing to assign physical rights and responsibilities. We therefore reverse and remand the award of parental rights and responsibilities for the court to correct these issues.

¶ 19. We conclude, however, that the evidence supports the court's determination that father was "less willing and able" to foster a positive relationship between the children and mother. Section 665(b)(5) requires the court to consider "the ability and disposition of each parent to foster a positive relationship and frequent and continuing contact with the other parent, including physical contact, except where contact will result in harm to the child or to a parent." 15 V.S.A. § 665(b)(5). This factor recognizes "the principle that the best interests of the child are furthered through a healthy and loving relationship with both parents." Frazer v. Olson, 2015 VT 84, ¶ 18, 200 Vt. 13, 127 A.3d 86 (quotation omitted).

¶ 20. Here, the court determined that "there is reason to believe that [father] would be less willing and able to promote a healthy relationship between the children and their mother." The court based this conclusion on several findings, including that father "[left] [mother]

9

substantially on her own, emotionally and financially, in dealing with her health issues," father delayed the moving process to Michigan and threatened to take the children away if mother pursued the move, and father "had complete control of the family finances, which he used as a manner of maintaining control over [mother]." The evidence supports these findings. Mother testified that father on different occasions would denigrate mother's contributions and paint her in a poor light such as when he "pressure[d] [the] kids so much about how much it hurt[] [father] when they leave," and told one child that mother and father were yelling "because Mommy hates Daddy." She testified that father made "sure [she] knew [she] was a bad mother" for missing their youngest child's birthday while she was recovering from surgery and that father called her "family members telling them how [she] won't get out of bed. [Father] enjoyed painting this picture of [her] as a mother that wouldn't get out of bed." Mother provided testimony of father leaving mother on her own emotionally and financially, that she "was very much on [her] own for a lot of that time" after the birth of their youngest child and that mother "never had access to anything" financial requiring father to "send [mother the] debit card" when they needed to make a purchase. Finally, mother also testified that in response to mother wishing to travel to Michigan, father got "very angry" and attempted to leave, telling their eldest child that she could not go with father because "you don't belong to me anymore," as well as telling mother that mother would be in trouble and would "not going to have [her] kids" if she left.

¶ 21. Father argues that mother's testimony was not credible and was contradicted by other evidence in the record, specifically mother's admissions that she paid for many household expenses herself and had a separate checking account. He argues that the evidence supports a conclusion that mother is actually the parent who is unable to foster a positive relationship because mother took the children to Michigan without notifying father, obtained a temporary relief-from-abuse order, and intended to move to Michigan requiring father to travel a long distance to visit

10

the children. "In the highly fact-intensive context of a custody determination, we rely on the family court's determinations of fact and evaluations of credibility." Hanson-Metayer v. Hanson-Metayer, 2013 VT 29, ¶ 12, 193 Vt. 490, 70 A.3d 1036. Father essentially asks us to reweigh the evidence on appeal, which we will not do. LeBlanc, 2014 VT 65, ¶ 23. The court's conclusion that father is less able to foster a positive relationship was supported by the record and was not clearly unreasonable based on the findings and evidence presented, and we therefore decline to disturb it. Terino, 2018 VT 77, ¶ 12.

The award of parental rights and responsibilities is reversed and remanded for further proceedings consistent with this decision.

FOR THE COURT:

_____
Associate Justice

11